State Bank of Wisconsin vs. Dutton et al.

it may be said, that whenever, by the voluntary acts of the parties, and the force and operation of the law, whether statutory or common as applied to those acts at the time, a right accrues to the one to have or demand something of the other, such right cannot, against the will of the party to be injuriously affected, be divested, modified or controlled by any subsequent legislation. In these cases the plaintiffs had, by the act of transfer and the operation of the law as then in force, an immediate and vested right to look to the makers for full payment, regardless of any equities which existed as between them and the company. This right the legislature could not destroy, or cut off, either by changing the rules of pleading or the laws of evidence; or by endeavoring to operate directly upon the right itself.

The judgment in each case must be reversed. The two first causes must be remanded to the court below with directions that judgment be entered in accordance with the prayers of the respective complaints. In the third case a new trial is awarded.

_____

STATE BANK OF WISCONSIN *vs.* DUTTON, et al.

APPEAL FROM COUNTY COURT, MILWAUKEE COUNTY.

Heard April 23.]                    [Decided June 4, 1860.

*Evidence—Practice.*

It is error in the court to admit evidence on the trial of a cause which related to propositions made by the parties in order to settle and compromise the claims sued upon; and this error is not cured by the court subsequently giving direction to the jury to disregard all such evidence, unless it positively appear that the jury gave the evidence no weight in making their verdict.

This action was brought to recover the amount due upon two bills of exchange made by Dutton & Raymond on Niles & Kinne at Buffalo, each for $5000 at 30 days from date, and indorsed to the plaintiff, with interest. The defendants confessed the making and indorsement, and non-payment at maturity; but set up that the money was borrowed for the purpose, and used in buying a cargo of wheat at Racine, to be shipped and consigned to the International Bank at Buffalo, to secure the payment of the drafts, and the warehouse receipts were to be delivered to the plaintiff as security; the wheat was in fact purchased for Niles & Kinne, and the defendants were their endorsers; and it was agreed that Niles & Kinne should sell all the wheat upon its arrival in Buffalo, and pay the proceeds into the International Bank for the benefit of the plaintiff. The wheat was so bought and shipped, and was received in Buffalo and placed in store amounting to 10,095 bushels, where it could have been sold for cash, for at least, a dollar a bushel by Niles & Kinne; that the plaintiff instead of selling, took possession of the wheat and sent it to New York city, and there sold 8,500 bushels at 92½ cents per bushel, and the balance at 83 cents per bushel, for which they claimed damages.

The evidence corresponded to this state of facts, except that the plaintiff was permitted to prove statements made by the defendants in negotiating for a settlement. The court in his instruction told the jury that they must disregard all that portion of the evidence. The verdict was given for the plaintiff, on which judgment was entered, and the defendant appealed.

*Cary & Pratt* for the appellant, upon the point that the court erred in admitting the evidence, notwithstanding his instructions to disregard it, cited the following, Cowen & Hill's Notes to Phillips' Evid., part 1, page 218, et seq.; Graham & Waterman on New Trials vol. 2, 613, et seq., 626–1; *Penfield vs. Carpenter*, 13 John., 350; *Irwin vs. Cook*, 15 John., 239; *Erben vs. Lorrillard*, 19 N. Y., 399.

*Starkweather* for the respondent.

*By the Court*, Cole, J. There can be but little doubt that the circuit court improperly admitted the evidence offered on

the trial which related to the propositions made by the appellants to settle and compromise the claims sued upon; and the question is, was that error cured by the subsequent direction of the court to the jury to disregard this evidence. It is insisted by the counsel for the respondent, that the admission of improper evidence is not a sufficient reason for reversing a judgment and granting a new trial unless it appears that injustice has been done by such admission, which he contends was not in the present case. Some of the most respectable authorities have held that when the improper testimony was of such a character as to be in violation of the well settled rules of evidence, giving the party offering it an unlawful advantage, its admission was a good ground for a new trial, and they do not seem to have stopped to inquire very critically what influence it might have had upon the minds of the jury. *Haswell vs. Bussing,* 10 John., 128; *Penfield vs. Carpenter,* 13 id., 347; *Irvine vs. Cook,* 15 id., 239; *Gillett vs. Mead,* 7 Wend., 193. But the doctrine of these cases has been criticised by Parker, C. J., in *Hamblett vs. Hamblett,* 6 N. H., 333, and in *Deerfield vs. Northwood,* 10 id., 269.

In the latter case he says: " That if evidence is admitted on trial, which proves to be incompetent, and the jury are directed to disregard it, the admission furnishes no ground for a new trial, unless there is reason to believe that the evidence improperly influenced the verdict." But he further adds, " there may be cases in which the irrelevent testimony which has been introduced is of a nature so well adapted to make such an impression on the minds of the jury, that instructions to disregard it cannot well have their legitimate effect; and there may be cases where after the admission of such testimony the result of the trial indicates that it must have had an improper operation." And he holds that in a case where there is a good reason to believe that injury has been done to the adverse party by the introduction of the improper testi-

mony notwithstanding the instruction of the court to disregard it, that a new trial should be ordered.

Without stopping to discuss this matter, it is very obvious that the admission of improper testimony is of a dangerous tendency, since it devolves upon the court to determine, what no human tribunal can ever satisfactorily determine, that is, what influence and impression the mind of another might have received from such evidence. But still, within the rule laid down by Judge Parker, we are satisfied that this judgment ought not to stand, as we are utterly unable to see how the jury arrived at the result they did, without giving some weight to this evidence in respect to offers of settlement and compromise, made by the appellants. For it appears to us that if the jury had believed from the evidence that the International Bank did not agree to deliver the wheat on a sale made or offered to be made by Niles and Kinne, in Buffalo, and did not in any way unlawfully interfere with, or attempt to control the disposition of the same, further than the bank had the right to do, by virtue of its lien upon the property; or sent the wheat to New York for sale, at the request of the appellants, or their agents, and disposed of it for the best market price which could be obtained therefor, accounting for the proceeds there, in that case the verdict should have been for the full amount claimed by the respondent. If, on the contrary, the International Bank improperly interfered with the wheat, and refused to let Niles & Kinne dispose of it, and apply the proceeds on the drafts held by the bank, when they had an opportunity so to do, and requested the privilege of thus disposing of it; or if the bank sent the wheat to New York for sale, without any authority so to do, and a loss was sustained in consequence, then we cannot see how the verdict could have been as high as it was. Upon the appellant's theory of the case, the verdict should have been for $872,80; and according to the respondent's theory

of the case, it should have been for $4,104,49. But the verdict was for neither the one sum or the other, but for $2,993,65. Now from the testimony in respect to the settlement, it appears that the appellants had proposed to give their notes, one for $500, due in thirty days from date, one for $1000, due in six months, one for $1000, due in one year, and a note for the balance, due in eighteen months, with 10 per cent. interest. Now, unless the jury gave this testimony some consideration, and were to a certain extent governed by it in coming to their conclusions as to the amount the respondent was entitled to recover, we are utterly at a loss to account for the verdict. We think it must have had some influence upon their minds, notwithstanding the direction of the court that they must disregard it. That being the case, there must be a new trial.

The judgment of the circuit court is reversed, and a new trial ordered.