BLAIR and another vs. THE MILWAUKEE AND PRAIRIE DU CHIEN RAILROAD COMPANY.

*Railroad companies—Liability for injuries caused by neglect to fence roads.*

1. Chapter 268, Laws of 1860, which requires railroad companies to fence their roads, would be valid as an exercise of the general police power of the legislature, without the existence of sec. 1, art. xi of the constitution of this state, by which the legislature is authorized to alter or repeal all general laws or special acts creating corporations under that section.

2. The chief object of the statute is to secure the safety of passengers upon railroad cars.

3. Any person who, without fault on his part, is injured by reason of the neglect of a railroad company to fence its road (except at its depot grounds and across highways), may recover the damages thereby sustained, without proof of any other negligence on the part of the company.

4. In this case the place of the accident was in the neighborhood of a depot, but out on the main line of the road, where there was but a single track, more than a hundred yards beyond the switch, and beyond where a cattle guard was subsequently placed, and the road at that place was fenced by the company soon after the accident, and continues to be so fenced. *Held*, that although long trains, in switching, run out to the place, it could not be considered a part of the depot grounds.

APPEAL from the Circuit Court for *Milwaukee* County.

Action by *Franklin J. Blair and wife*, to recover damages for injuries received by the latter while a passenger on defendant's road, and alleged to have been caused by defendant's negligence. The complaint alleges, in substance, that in consideration that &c., defendant (which is alleged to have been a common carrier, &c.) promised and undertook to convey *Mrs. Blair* from Madison to Milwaukee, and to use due care and diligence, &c., and that confiding in said promise and undertaking, *Mrs. Blair* did, on &c., engage a seat in defendant's cars, to be conveyed &c., and that *Mr. Blair* then and there paid defendant the sum of three dollars, the same being a reasonable hire and reward, &c. It then alleges a breach of said promise on defendant's part in failing to use proper care, by reason of which negligence the cars were thrown from the track, and *Mrs. B.* injured. The injury averred was done to the left knee, and by reason thereof, it is averred, *Mrs. B.* "has become permanently lame in the left

leg, and a cripple for life, so that she will always be obliged to use crutches and other artificial means in walking."

The following facts were proved or admitted at the trial. On the 5th of January, 1866, *Mrs. Blair* took passage from Madison to Milwaukee in a train of cars on defendant's road, *Mr. Blair* paying the fare from his own money. Just before reaching the station at Stoughton, the train, coming in contact with a cow, was thrown from the track, and *Mrs. B.*, without any fault on her part, received the injuries complained of.

The plaintiffs undertook to show that the defendant was negligent in a variety of particulars in the actual running and management of the train ; and a large amount of evidence was introduced on both sides bearing upon the questions thus raised, and numerous exceptions were taken by the defendant to the rulings of the court in respect to such evidence, and also to the giving and refusing of instructions upon the same points. All these became unimportant here, upon the view taken by this court.

As to the place where the accident occurred, a witness for the plaintiffs testified that he thought it was about sixty rods from the depot, and thirty from the switch, towards Madison ; that it was on the main line, and off from the depot grounds as platted, said switch being on the line of what were called the " depot grounds ;" that the road was fenced in May or June following the accident, and a cattle guard was also put in after the accident. He further testified that the place where the cow was struck is about 478 feet from the cattle guard since constructed. H. H. Giles, defendant's agent at Stoughton, as a witness for the plaintiff, testified that there was no fence by the side of the track at the place where the accident occurred ; that the point was beyond the switch and where there was but a single track ; and that the track has since been fenced : " The place where the accident occurred is a part of the depot grounds. The company's ground where it occurred is four rods wide. It is wider at the station and on each side of the sta-

tion until you get to the place where the accident occurred. The ground at that place is used merely in switching trains. No freight is unloaded there. It is used every day for switching trains, sometimes three or four times. I speak of the width of the grounds as they are used. * * * By depot grounds I mean all the grounds we use for railroad purposes in and around the station. We use depot grounds for storing wood, keeping cars, unloading and loading freights, and switching trains. The cattle guard and fence [constructed since the accident] at that point, interfere with the switching of the trains. It interferes with the men getting around the cars. The fence is not in the way where the accident occurred, but would be of no use without the cattle guard."

The defendant asked the court to instruct the jury that if the ticket for *Mrs. Blair's* passage was purchased by her husband with his own money and at his own request, the plaintiffs could not recover under the complaint in this action; but this instruction was refused. The court submitted to the jury the several questions of negligence raised by the evidence, and as to the absence of a fence at the place of the accident instructed them as follows: " Under the statute the company is bound to maintain a fence or pay for cattle. * * At common law the company is not bound to fence its road as between itself and passengers. I therefore cannot instruct you as matter of law that the defendant is liable because its road was not fenced at this place, but I submit to you the question of fact, whether it was negligence in the company not to have its road fenced at the place of the accident."

Verdict for the plaintiffs, for $8000 damages. Motion to set aside the verdict as contrary to the law and to the evidence, and because the damages were excessive, denied. From a judgment on the verdict the defendant appealed.

*Finches, Lynde & Miller*, for appellant, argued among other things, that the cause of action stated in the complaint was upon *contract* between *Mr. Blair* and the defendant, and not one

sounding in *tort*, and the joint action of both plaintiffs could not be maintained. 6 Hurls., W. & G., 761. 2. The testimony of Mr. Giles shows that the place where the accident happened was used for purposes connected with depot grounds. The company were certainly not bound to fence any portion of this ground. 6 Ind., 141; 8 id., 402; 20 id., 231; 31 Ill., 304. And although a fence has since been built and a cattle guard constructed, the evidence shows that they are inconvenient and obstruct the employees of the company in switching trains. 3. The damages were excessive. Had the injury resulted in the death of *Mrs. Blair*, her legal representative could in no event have recovered more than $5000. R. S., ch. 105, sec. 13. This is not an absolute test, but is one which judges have often used in discussing the question of excessive damages. 12 Barb., 492; 19 id., 461; 26 Ill., 388, and cases there cited. Cousel urged further upon this point the fact (which appeared clearly from the evidence) that *Mrs. B.* had been in very feeble health for many years before the accident, and contrasted the case, with respect to damages, with those in 1 Sneed, 220; 20 Barb., 282; 10 id., 622; 11 Pick., 106; 1 McLean, 546; 2 id., 164; 6 id., 106; 1 Kern., 416; 9 Richardson, 84; *Chamberlain v. M. & M. R. R. Co.*, 7 Wis., 425; *Spencer v. M. & P. du Ch R. R. Co.*, 17 id., 487.

*Butler & Cottrill*, for respondents.

DIXON, C. J. Section one of the act approved March 30, 1860 (Laws of 1860, ch. 268), is an almost literal transcript of section 44 of the general railroad act of New York of 1850. It was first passed in that state in 1848, and was under consideration in the Court of Appeals in *Corwin v. The New York & Erie Railroad Co.*, 13 N. Y., 45. I agree to the opinions of the judges in that case, and especially to that expressed by Judge DENIO, that it was not enacted for the paltry purpose of determining who should bear the pecuniary burthen of building and maintaining division fences, as between railroad companies

and the adjoining proprietors of land, nor to fix the liability
of such companies for injuries occasioned to domestic animals
before such fences should be built; but that the great object of
its enactment was the increased safety of the lives and limbs
of passengers which would be secured by a strict observance
of its provisions. Experience had demonstrated that of the
multiplicity of most appalling accidents happening from this
mode of carriage, by far the greater number arose from
obstructions caused by cattle and other animals coming upon
the track. Experience had likewise shown that it was entire-
ly insufficient for the protection of the public, to leave the
building and maintaining of those fences, so as to prevent such
intrusion upon the track, to the sense of duty or interest of
the multitude of proprietors of land adjoining our long lines
of railroad. To remedy this evil and insure the safety of the
traveling public, so far as possible, in this respect, the act in
question was passed, making it the sole and absolute duty of
all railroad companies to fence and provide their roads with
suitable cattle guards. This object is manifest. The legisla-
ture declare it in so many words to be " to prevent cattle and
other animals from getting on to such railroad."

It is not probable that any doubt could have arisen as to the
proper construction of the act, had the last clause been omit-
ted. That clause provides that until such fences and cattle
guards shall be duly made, each railroad company, its agent
&c., shall be liable for all damages which shall be done by the
agents or engines to cattle, horses, or other domestic animals
thereon. It is observed by Justice PAINE, in *McCall v. Cham-
berlain*, 13 Wis., 639, that the addition of these words does not
vary the liability of the companies. However this may be,
I think Judge DENIO is undoubtedly correct when he says that
this provision was introduced as one method of securing the
main object of the act, to wit, the protection of the lives of
persons traveling by railroad.

With this understanding of the statute there can be no ques-

tion about the liability of the railroad company in this case. There was no negligence or want of care on the part of the plaintiffs, contributing to the injury. The accident occurred and the injury resulted solely and exclusively from the failure of the company to perform a positive and unqualified duty imposed by statute. The action rests on a public obligation to which the company is subject for the benefit of the public. The omission of the company to fence its road must be regarded as in the highest degree negligent; and by such omission the company necessarily assumes responsibility for all damages which may ensue from that cause. Any person, therefore, who without fault on his part, is injured from such cause, may recover from the company for the damages sustained, without any other proof of negligence on the part of the company. Hence it becomes wholly unnecessary to consider any of the other numerous questions of negligence on the part of the company, raised in the case and argued at the bar. Sufficient unto the day is the evil thereof. The other questions will not be considered.

It may be thought that something should be said of the power of the legislature to impose the duty of erecting and maintaining fences upon the railroad companies, when before the act, in some instances at least, the burthen of erecting and maintaining such fences rested upon the proprietors of adjoining lands. For the plaintiffs it is contended that the power exists under section 1 of article XI of the constitution, by which the legislature is authorized to alter or repeal all general laws or special acts by which corporations are created under that section. I do not think it is necessary to resort to that section of the constitution to sustain the act in question. It seems to me to be essentially a police regulation, and as such entirely within the general scope of legislative authority upon that subject. It seems to me that without that clause in the constitution, the legislature might, from time to time as the public exigencies require, alter or modify the laws in this respect,

leaving it to the railroad companies and the adjoining proprie-
tors to settle the question of pecuniary burthen or compensa-
tion between themselves, the former having a right of action
against the latter in all cases where the latter are primarily
bound to, but do not, erect and maintain fences as required by
the statute. I have no doubt of the constitutionality or the
wisdom and propriety of the statute.

*By the Court.*—Judgment affirmed.

DOWNER, J., did not sit in this case.

On a motion for a rehearing, the defendant's counsel argued
that railroad companies in this state are not bound to fence
in their depot grounds, or highway or street crossings, and cit-
ed 31 Ill., 304; 6 Ind., 141 ; 8 id., 402 ; 20 id., 231. 2. That
the case having been decided here upon a point repudiated by
the circuit judge, the judgment should still be reversed on ac-
count of the admission of incompetent evidence in the court
below upon the questions there made—evidence tending to af-
fect the minds of the jury in a manner unfavorable to the de-
fendant, and thus increase the damages. 21 Barb., 496 ; 19
N. Y., 299; 1 Coms., 521 ; 11 Wis., 374; 8 Barb., 533 ; 32
id., 25; 1 E. D. Smith, 619 ; 20 N. Y., 472; 42 N. H., 100.

DIXON, C. J. We had not supposed, before reading the ar-
gument in support of this motion, that it could by any possibili-
bility be inferred from the language of the foregoing opinion, that
the act of 1860, requiring railroad companies to fence their
roads, was, or was to be, so construed as to require such com-
panies to obstruct public highways by fences at the crossings,
nor to fence their depot grounds. It is, however, insisted that
the "opinion is too broad," and that "it should be so qualified
as to hold that the company are not required to fence in their
*depot grounds or highway or street crossings."*                     ʻ

The words in italics are those which are italicised by coun-
sel. We had supposed that the opinion was to be read in con-
nection with the statute, and with a view to the point under

consideration.    By the first section of the act, depot grounds are expressly excepted, and highway crossings by the strongest possible implication.    Express provision is made for the construction and maintenance of cattle guards at all highway crossings, to prevent cattle from getting on to railroads from the highway.    To obviate these most unexpected apprehensions of counsel, we will say, and say emphatically, that there is not the slightest disposition on the part of the court to disregard the plain provisions of the statute in either of these particulars. See *Bennett v. Chicago & Northwestern Railway Co.*, 19 Wis., 145.

As to the place of the accident being within the depot grounds of the company at Stoughton, it seems to us, after a careful consideration of the testimony, that there is no ground for saying that it was.    It was out upon the main line of the road, where there is but a single track, several hundred feet beyond the switch, and beyond where the cattle guard now is.    It is an admitted fact that the same was fenced by the company as part of the main line shortly after the accident in question, and that it has so remained ever since.    And although long trains, in switching, sometimes run out to the place of the accident, still it is clearly shown that there is and was no practical objection to its being fenced.    We do not think, under the circumstances, that it can be considered as part of the depot grounds.

Again, we are urged to consider and decide the other numerous questions of real or supposed negligence on the part of the company, concerning which much evidence was given at the trial; and again we repeat that, one conclusive ground of liability being established against the company, we can see no reason or propriety in our considering the others.    Whether any of the testimony upon those others was improperly received or not, is wholly immaterial, since it only affected the question of liability, and not the amount of damages.

*By the Court.*—Motion denied.