Sabine vs. Johnson and others.

SABINE VS. JOHNSON and others.

MILL-DAM LAW: PLEADING: EVIDENCE: DAMAGES: PRESCRIPTION. (1) *Complaint amendable as to description of land.* (2) *What testimony competent as to height of water.* (3) *Quœre, as to individual right of action by tenant in common.* (4–6) *Rule of damages stated where there are different owners.* (7–9) *Remedy as to future annual damages.* (10) *Verdict need not designate height of dam.* (11) Onus probandi. (12) *Mead v. Hein & Schmidt*, 28 Wis., 533, *overruled.* (13–15) *Prescription; adverse user.* (16) *Periodical freshets to be considered.* (17) *Right to flowage, limited to same extent as before conveyance.*

REVERSAL OF JUDGMENT. (18, 19) *When verdict not vitiated by improper evidence.* (20) *Not error to refuse correct instruction inapplicable to facts.* (21) *Judgment not reversed where evidence tends to support verdict.*

1. In an action under the mill-dam law, for flowage of plaintiff's land, where the evidence received without objection points out the precise tract of land affected by the dam: *Held,* that the complaint, if not sufficiently definite and certain in its description of the land, was amendable in that respect either before or after judgment, and defendant could not avail himself of the objection taken first in this court.

2. The issue being whether, after a certain date, plaintiff's land was *flowed to a greater extent* than previous to that date, any testimony was competent which tended to show that the height of the water had increased after that date *at any point in the stream between said land and the dam.*

3. Whether a tenant in common of land flowed by a mill dam can maintain an action under the mill-dam law, without making his cotenant a party, is not here decided.

4. In an action under the mill-dam law, where there is but one defendant, or where all the defendants acquired their interests at the same time, *it seems* that no damages can be recovered which accrued before such defendant or defendants owned or occupied the property.

5. But where there are several owners or occupants of the mill dam and property at the beginning of the action, who have held their respective shares for unequal periods, the rule above stated cannot be applied.

6. In such a case the damages should be assessed from the date of the *oldest title* in any one of the defendants, not exceeding three years before the action was commenced.

35 185
74 606
35 185
104 419
35 185
59 LRA 842n
59 LRA 877n
59 LI A 902n
59 LRA 903n

7. In such an action no judgment should be rendered upon the verdict, in the first instance, for *future annual damages*, but only for the *past* damages and costs. *State ex rel. Aiken v. Mills*, 29 Wis., 322.

8. Annual damages accruing subsequent to such verdict are to be recovered by civil action against the persons who may own or occupy the dam and mill property at the time such action is commenced, or by some other appropriate remedy not affecting a defendant in the original proceeding who has transferred his interest in the property *pendente lite.*

9. Where judgment in form was rendered in the original proceedings for the future annual damages as determined by the verdict, against all the defendants, but such damages were merely *nominal*, and *execution* was issued only for the damages already accrued: *Held*, that a defendant who had conveyed his interest *pendente lite*, was not injured by the irregularity, and it was not sufficient ground of reversal as to him.

10. In actions under the mill-dam law, where the complaint alleges that the dam is maintained at an unreasonable height, the statute (sec. 16) does not require the verdict to designate the height of such dam, but merely how much, if any, it shall be lowered.

11. Where the jury were told that plaintiff could recover only for the increased flowage of the land after he became the owner, and that they were to find from a preponderance of the testimony whether there was any such increased flowage, this was in substance and effect an instruction that the *onus probandi*, in that respect, was with the plaintiff, and there was no error in refusing a separate express instruction upon that point.

12. A majority of the members of the court are now of the opinion that the grantor of lands which are flowed at the time of sale by means of a mill dam lawfully erected and maintained, but in respect to which no proceedings to assess damages have been taken, is entitled only to such damages as have *accrued at the time of sale*, unless he specially reserves future damages; and that, in the absence of such reservation, the grantee is entitled to all damages which may accrue after his purchase of the land; and that each of them may recover such damages by proceedings under the mill-dam law. *Mead v. Hein*, 28 Wis., 533, as to this point, overruled.

13. To establish a prescriptive right to flow land, it must appear that the land *has actually been flowed* for the time limited by the statute; and it is not enough to show that the *dam has been maintained* at its present height for that period.

14. The adverse user in such a case must be continued and uninterrupted for the length of time prescribed by the statute, although mere tem-

porary or accidental interruptions will not stop the running of the prescription, if there be no intent to abandon the easement, and the user is resumed within a reasonable time thereafter. *Haag v. Delorme*, 30 Wis., 591.

15. It was not error, therefore, to refuse an instruction to the effect " that if defendants and their grantors had constantly, for ten years before the commencement of the action, maintained the dam at a height which might raise the water on the plaintiff's land to a certain height, but which did not usually and constantly keep the water to that height, because of the leaky condition of the dam or rude construction of the machinery in the mills, or a lavish use of the water, then, if the dam was afterwards repaired, the machinery improved, or the water used in a different manner or more economically, by means whereof the plaintiff's lands were flowed to a greater extent, without any increase in the height of the dam, this is no new flowing for which defendants are liable."

16. In determining plaintiff's right to recover in such an action, the jury are to consider not only the increased flowage of the land " at an ordinary stage of water," but also the effect of those ordinary periodical freshets which can be foreseen with reasonable certainty.

17. Where the same original owner conveyed first the mill property and water power to defendants' grantors, and afterwards the lands here alleged *to be flowed to plaintiff's grantor*, the first conveyance carried with it, as appurtenant to the premises so conveyed, the right to flow plaintiff's said lands *to the same extent to which they were then flowed* by said dam; but did *not* convey the right to flow them to any greater extent, even though such original owner was then *authorized by law* to raise the dam to a height which would cause an increased flowage.

18. Where evidence was improperly received, but the court directed the jury to disregard it, and the verdict itself satisfactorily shows that such direction was obeyed, the admission of such evidence is no ground of reversal.

19. The court has a large discretion as to the admission of preliminary testimony; and even an erroneous admission of testimony will not be regarded as error, where there is no reason to believe that the verdict was affected by it to appellant's injury.

20. It is not error to refuse an instruction correct in law, which is not applicable to the facts established by the pleadings, or by clear and uncontradicted evidence.

21. Where there was evidence tending to sustain the verdict, the judgment thereon should not be reversed merely because this court might differ from the jury as to the weight of evidence.

APPEAL from the Circuit Court for *Rock* County.

Action under the mill-dam act. The complaint alleges that the plaintiff is the owner in fee simple of lots one (1) and two (2) of section one (1), town seven (7), range fourteen (14), in Jefferson county, and that said lands are flowed and damaged by means of a certain mill dam across Rock River below said lands, maintained by the defendants without any authority therefor other than is conferred by an act of the legislature, entitled "an act to authorize the construction of a dam across Rock River," approved February 4, 1842. It is further alleged that such dam is maintained to an unreasonable height; and, in addition to the usual prayer for the assessment of damages, the complaint demands that the dam be lowered.

The answers of the defendants are, in substance, as follows: 1. A general denial. 2. That the cause of action did not accrue within ten years before the action was commenced. 3. That the dam and water have been kept up and maintained at the present height thereof, uniformly, for twenty-seven years last past, and longer. 4. That one Alonzo Wing, about the year 1848, was at the same time the owner in fee simple of the dam and water power in question, and also of the lands of the plaintiff described in the complaint; and that, before he conveyed said lands, he conveyed such dam and water power to the grantors of the defendants, of which the plaintiff had notice when he took conveyances of such lands. 5. That the defendant *Wolff* had no interest in such dam and water power until October, 1869, and the defendant *Puerner* had no such interest until May, 1869.

The action was commenced in February, 1870, was transferred from Jefferson to Rock county, and was tried in the circuit court for the latter county at the April term, 1872.

It appears from the evidence that lots one and two mentioned in the complaint consist of that portion of the northeast quarter of section one (1) therein mentioned which lies north and west of Rock River, and contains something more than

one-half the area of the quarter section ; that Alonzo Wing and wife conveyed 30 acres in lot two to the plaintiff and two others in 1864, and ten acres in said quarter section, being parts of said lots one and two, to the plaintiff alone on March 4, 1868 ; and that previous to such conveyances Wing had owned and conveyed the mill dam and water power as alleged in the answers. The averments of the answers in respect to the duration of the interests of the defendants *Wolff* and *Puerner* are also proved.

The verdict of the jury is as follows : " We find that the complainant is entitled to recover damages, and we assess the amount of such damages sustained by the plaintiff within three years next preceding the institution of the complaint, and since March 4, 1868, and down to the time of rendering the verdict, to the amount of one hundred and fifty dollars. And we determine that the plaintiff is entitled to be paid annually as a just compensation for the damages that shall be hereafter occasioned by the dam, so long as it shall be used in conformity with this verdict, the sum of six cents, and that six cents in gross would be a just and reasonable compensation for all of the damages to be hereafter occasioned by such use of the dam and for the right of maintaining and using the same forever in the manner aforesaid. And we, the jury, decide that the dam of the defendant shall be lowered to the extent of six inches below the now highest point in said dam, from the first day of May until the first day of August, each year hereafter, between the chute and west end of said dam, being about 122 feet."

Judgment was afterwards duly entered pursuant to the verdict, and all the defendants appealed therefrom.

The proceedings on the trial, and the various rulings of the court which are claimed to have been erroneous, are sufficiently stated in the opinion.

*D. F. Weymouth* and *I. W. & G. W. Bird,* for appellants, contended that the complaint was defective in not containing such a description of the land alleged to be flowed as to show

that the matter had been heard and determined.   R. S., ch. 56, sec. 5 ; 2 Tay. Stats., 812.   2. Plaintiff also failed to prove title to any particular piece of land, and failed to locate lots one and two in the quarter section, and the ten-acre tract in lot one. The evidence as to the flowage of other land than plaintiff's was inadmissible.   Angell on W C., § 514 ; *Smith v. Russ*, 22 Wis., 439 ; *Standish v. Washburn*, 21 Pick., 237.    3. The evidence as to the west thirty acres of lot two was inadmissible, because plaintiff was only one of two joint owners.   Angell on W. C., § 528 ; *Tucker v. Campbell*, 36 Me., 346 ; *Moore v. Shaw*, 47 id., 88.   And the charge of the court that plaintiff could not recover for any damage to said thirty acres did not cure the error of admitting this evidence.   *State Bank v. Dutton*, 11 Wis., 371 ; *Remington v. Bailey*, 13 id., 332 ; *Burton v. Kane*, 17 id., 37.   4. The court erred in refusing the instruction asked by defendants as to the burden of proof as to the increase of flowage or injury since plaintiff's purchase.   This was an affirmative fact, which plaintiff must prove to entitle him to recover.   *Central Bridge Corporation v. Butler*, 2 Gray, 130. And to entitle plaintiff to recover, he must show that at the time he commenced his action he had a cause of action against defendants.  This he could show only by proving an increase in the flowage or injury to his land between the time of his purchase and the commencement of suit.   The fact that a cause of action accrued after beginning suit would not sustain the action already begun. 1 Wis., 401.   5. As regards the operation of the statute of limitations, it is to be observed that, under the statute, the only thing necessary to constitute a bar to the action is, that the lands shall have been flowed the ten years.   The extent of the flowage does not enter in as an essential part of the bar.   But the court, in the charge given upon this point, not only makes the extent of the flowage an essential part of the bar, but compels defendants to prove that the lands were flowed for the ten years not only to the same extent that they were at the time the action was begun, but also to the same extent that

they have at any time since been flowed. 6. It was error to assess damages and render judgment for the same against all the defendants from March 4, 1868, to April, 1871, and then yearly damages for all time thereafter. Defendants *Puerner* and *Wolff* were not answerable for any damage done before they became or after they ceased to be interested in the mill and dam. But nearly a year's damages were assessed against *Puerner* before he had any interest in the dam, and over a year's damages after his interest ceased; while *Wolff* is charged with damages occasioned for more than a year before he had any interest in the dam. See upon this point Angell on W. C., §§ 510, 527; *Holmes v. Drew*, 7 Pick., 141; *Charles v. Monson & Brimfield Manuf. Co.*, 17 id., 70; *Hennesy v. Andrews*, 6 Cush., 170. 7. The verdict is also defective in not determining the height of the dam.

*Gillet & Taylor*, for respondent, contended that the complaint contained a sufficient description of the land flowed. *Commonwealth v. Ellis*, 11 Mass., 462. 2. The objection that the plaintiff failed to proved title to any particular piece of land, and that the ten-acre tract was not shown to be any part of lots one and two of section one, cannot be raised here, not having been taken in the court below. And the evidence shows that the ten-acre tract was clearly pointed out to the jury. 3. The evidence as to the height of the water in Rock River north of Johnson's Creek and south of plaintiff's land, was admissible to show that the waters of the river had been raised at plaintiff's land, it being in proof that the water was nearly level from the creek to said land. 22 Wis., 439; 21 Pick., 267; Angell W. C., 514. 4. As to the alleged error of the court in admitting evidence concerning the thirty-acre tract, of which plaintiff was only a joint owner with others, the error, if any, was cured by the charge of the judge; and unless it appears affirmatively that defendants were prejudiced thereby, the verdict will not be set aside for that reason. Counsel, however, insisted that as the action under the mill-dam law is not for a mere temporary in

jury to the *possession*, but for an injury to the *estate*, of a con-
tinual and permanent kind, it may be maintained, like ejectment,
by one of several tenants in common, without joining his co-
tenants.    5. Plaintiff is entitled to recover for damage occa-
sioned by the flowage since he acquired the title, *without show-
ing any increase.*    17 Pick., 70; 7 id., 141; 10 Met., 203;
15 Gray, 468; 16 id., 187; 12 Wis., 11; 15 id., 101; 1 Fairf., 224;
5 Shep., 169.    6. When a prescriptive right of flowage is
set up, the question is, how high the party claiming it has
maintained *the water in his pond and in the stream above the
dam,* and not how high he has maintained the dam.    Angell
on W. C., § 379; *Dyer v. Dupui,* 5 Whart., 584; *Heath v. Wil-
liams,* 12 Shep., 209; *Smith v. Russ,* 17 Wis., 227.    It is quite
doubtful whether the doctrine promulgated in *Cowell v. Thayer,*
5 Met., 253, ought to be accepted by this or any other court.
See 16 Pick., 241; 17 id., 184; *Chapman v. Thames Manuf.
Co.,* 13 Conn., 269; *Darlington v. Painter,* 7 Barr, 473; *Tyler v.
Wilkinson,* 4 Mason C. C., 397.    However this may be, defend-
ant was not prejudiced by the refusal of the instruction asked
by him on that subject, as plaintiff's right to recover was ex-
pressly limited by the court to such damages as he had sus-
tained by an increase of flowage since his purchase.    7. For
injuries arising from common floods or freshets which occur
annually, the mill-dam owner is equally responsible as for in-
juries caused by the back flow of water in the ordinary state of
the stream.    This exemption from liability is limited to those
*extraordinary* floods or freshets which come only at very long
intervals, and are exceptional in their nature.    *Pixley v. Clark,*
35 N. Y., 521; *Mayor of N. Y. v. Bailey,* 2 Denio, 435; *Inhab-
itants of China v. Southwick,* 12 Me., 238; *Bell v. McClintock,* 9
Watts, 119; *Lehigh Bridge Co. v. Lehigh Nav. Co.,* 4 Rawle, 9;
Angell on W. C., § 349.    The instruction asked by defendant
on this subject was erroneous, because it did not restrict the
exemption from liability to such extraordinary freshets.    8. The
grant of a mill and water power gives the grantee no right to

Sabine vs. Johnson and others.

flow the lands of the grantor to any greater extent than they were flowed at the time of the grant. Angell on W. C., §§ 358, 360; *Rackley v. Sprague*, 5 Shep., 281. 9. The point that one of the defendants did not purchase until 1869, and that it was therefore erroneous to find against him for all the damages which had accrued from March, 1868, to the time of rendering the verdict, was not raised at the trial, and should not be urged here. But as the law requires plaintiff to make all the owners parties to the action who were such at the time of beginning suit, and as the statute seems to contemplate but one judgment and one verdict, it is difficult to see how the verdict and judgment can be adjusted to suit the views of defendants. Moreover the defendants have all joined in one appeal to this court, and must all stand or fall together. 10. As to the objection urged to the charge of the court upon the construction of the law of 1862, it is absurd to say that the legislature intended that if a mill-dam owner flowed ten acres of land for ten years, he might thereafter flow twenty acres with impunity, or that if for ten years he flowed the land to the depth of one inch during one or two months of the year, he might thereafter flow it to the depth of ten feet the year round with like impunity. The law upon this point was properly submitted by the court.

LYON, J. 1. It is objected that the complaint does not contain a sufficiently specific description of the land overflowed by means of the mill dam of the defendants. This objection does not appear to have been made in the court below. The evidence on the subject, which was received without objection, pointed out the precise tract of land affected by the dam, and if the description thereof in the complaint is wanting in definiteness, the complaint is amendable in that respect, as well after as before judgment. R. S., ch. 125, secs. 33, 34 and 37 (Tay. Stats., 1445–6, §§ 35, 36 and 41).

The claim that the plaintiff failed on the trial to locate lots one and two in the northeast quarter of section one, and also the

ten-acre lot conveyed to him by Wing, is not sustained by the facts. We have found no difficulty in ascertaining from the record where those several tracts are located.

2. In that portion of the answer which sets up a prescriptive right to maintain the dam and the waters of Rock River at their present height, there is a distinct admission that the plaintiff's land, described in the complaint, had been, for more than twenty years before this action was commenced, overflowed and soaked by means of such dam, to the same extent that it was overflowed and soaked when the action was commenced. Also the testimony tends to show that the land was overflowed by means of such dam at the time last mentioned. It appears that the plaintiff's land described in the complaint is about six or seven miles in a direct line above the mill dam in question, and several miles farther by way of the river. About two miles in a direct line below such land, a stream of water called "Johnson's Creek" empties into Rock River. Several witnesses were allowed to testify, against the defendant's objection, as to the stage of the water in the river at different points between the mouth of Johnson's Creek and the plaintiff's land, in each of the years from 1864 to 1870. The admission of this testimony is claimed to be an error fatal to the judgment.

It will more fully appear hereafter in this opinion, that, under the instructions given by the court to the jury, the testimony as to the stage of the water before the year 1868, was immaterial. The issue in that behalf was, whether the land had been overflowed to an increased extent after March 4, 1868. It seems very obvious that any testimony which tended to show that the height of the water at any point in the mill pond had increased after the date last aforesaid, must be competent. It being conceded that the dam originally set the water back on the lands of the plaintiff, any testimony which tended to show that the water was higher at any point between the land of the plaintiff and the dam, at any given time, must, necessarily, also tend to show that there was a corresponding increase in the

height of the water at the plaintiff's land, as well as at every other point in the mill pond. It is believed that the testimony was properly received.

3. The court admitted testimony (under objection), relative to the overflowing of the thirty-acre tract which the plaintiff owned in common with others, and the damages occasioned thereby, but instructed the jury in relation thereto, as requested by the defendants, as follows : " That as to the thirty acres of land deeded by Alonzo Wing to plaintiff, Drunetsky and Hoshky, August 12, 1864, and now owned by plaintiff and Hoshky, the plaintiff cannot recover, because an action for flowing or injuring lands owned by two persons in common or jointly must be brought by all of the persons owning the land." It is strongly argued by the counsel for the plaintiff that this instruction is erroneous, and that the testimony was properly admitted. But we do not find it necessary to deter-mine the correctness of the instruction, and we do not here de-cide whether a tenant in common of lands may maintain an action under the mill-dam act for flowing the same without join-ing or making his cotenant a party to the action. Conceding that the instruction states the law correctly, it necessarily fol-lows that the testimony concerning damage and injury to the thirty-acre tract was improperly received. Was the error (if it be an error), cured by the instruction ? In the case of *The State Bank v. Dutton*, 11 Wis., 371, the rule applicable to a case of this kind was stated as follows : " If evidence is admitted on the trial, which proves to be incompetent, and the jury are directed to disregard it, the admission furnishes no ground for a new trial, unless there is reason to believe that the evidence im-properly influenced the verdict," or unless the court can per-ceive that the improper evidence thus admitted might have in-jured the party objecting to it, notwithstanding the direction to the jury to disregard it.

Here the verdict itself contains evidence that the jury did not disregard the instruction. For it dates the assessment of

damages from March 4, 1868 (the time when the plaintiff acquired title to the ten-acre tract), whereas, under the instructions which will presently be stated, had they assessed damages in respect to the thirty-acre tract, the same should have been assessed from February, 1867, or for three years next preceding the commencement of the action. We are satisfied that the jury obeyed the direction of the court, and confined their assessment to the ten-acre tract.

4. A further objection to the testimony, and the only remaining one, may be considered here. The defendants called as a witness one Hillyer, who testified that he built a certain bridge across the river in the neighborhood of Johnson's Creek, about the year 1857. After the defendants closed their testimony, the plaintiff called one Waterbury, who testified that the present embankment of that bridge was built, as he thought, in 1853, the same as it now is. He was then asked, " By whom was it built ?" This question was objected to by defendants, whereupon the counsel for plaintiff stated that he proposed to show by the witness that the defendants built it. The objection was overruled and the witness answered that it was built by Hulburt, Henry, Hillyer and another party. Hillyer also testified in relation to a roadway extending across low ground west of the bridge, and that it was built before the bridge. This roadway is believed to be the same work which Waterbury designates as an " embankment." This subject seems to have been introduced by the defendants, and it was certainly competent for the plaintiff to rebut the testimony of the defendants relating thereto. The question to Waterbury, inasmuch as it referred to the *embankment* rather than the *bridge*, was perhaps a little in advance of strict rebuttal. Had it referred to the latter it would have been strictly responsive to the defendants' testimony; for, as above stated, they had given testimony to the effect that Hillyer erected the bridge. It was probably within the large discretion which the court necessarily has in respect to the

admission of preliminary testimony, to allow or reject the question. But if it was improperly allowed, it is difficult to perceive that any harm resulted therefrom, inasmuch as the plaintiff entirely failed to prove what he proposed to prove. to wit, that the defendants erected the embankment. It is true that the testimony tended to show that the embankment was erected by the grantors of the defendants, but we discover nothing in the record upon which to found a suspicion, even, that this fact had the slightest influence upon the verdict.

5. It is claimed that inasmuch as *Wolff* and *Puerner*, two of the defendants, did not own an interest in the dam and water power during the whole time covered by the assessment of past damages, to wit, from March 4, 1868, until the rendition of the verdict, in April, 1871, the judgment as against them is necessarily erroneous. They were owners in part and occupants of the dam, mills and water power when the action was commenced, and it is not denied that they were properly made parties to the action. The mill-dam law fails to provide means for apportioning damages between defendants. New parties may be brought in when their presence is necessary to a complete determination of the controversy, as was done in this case, but we find no provision in the act for releasing a party or reducing the recovery against him because he has parted with his interest in the mill property *pendente lite*. It has been held in Massachusetts, under a similar law, that no damages can be recovered which accrued before the defendant became the owner or occupant of the mill property. *Holmes v. Drew*, 7 Pick., 141. See also *Charles v. Monson Manufacturing Co.*, 17 id., 70. In a case in which, as in those above cited, there is but a single defendant, or wherein the interests of all of the defendants commenced at the same time, the rule adopted in Massachussetts is easy of application and is probably the correct rule. But where, as in this case, there are several owners or occupants of the mill dam and mill property, who have held their respective shares for unequal periods, it

seems quite impracticable to apply the same rule.. Were it applied to this case, three distinct assessments of past damages would be required : one against all of the defendants, another against all except *Wolff*, and still another against all except *Wolff* and *Puerner*. The law does not seem to provide for more than one assessment of damages in the same proceeding.

Upon the whole, we have concluded that the better rule is, that where several defendants, whose interests in the mill property accrued at different times, are held liable for any past damages, such damages should be assessed from the date of the oldest title, but not exceeding three years before the proceedings were commenced, without regard to the time when the defendants who hold under junior titles acquired the same. Persons purchasing an interest in mill property, to hold in common with others, if they would protect themselves from liability for such damages accruing before their purchase, may insist upon proper indemnity from their grantors against such liability.

It is argued that the judgment is against all of the defendants for the annual compensation fixed by the jury, and that this is erroneous so far as the defendant is concerned who conveyed his interest in the mill property *pendente lite*. In *State ex rel. Aiken v. Mills*, 29 Wis., 322, we held that in cases like this no judgment should be rendered upon the verdict, in the first instance, for future damages, but only for past damages and costs. The grounds of that decision are fully stated in the opinion by the chief justice, and will not be repeated here. It is clearly the intention of the legislature to confine the remedy for future damages to a civil action against the person or persons who may own or occupy the mill dam and property at the time such action is commenced, or to some other appropriate remedy which cannot affect a defendant in the original proceeding who has transferred his interest in the property *pendente lite*. In this case a judgment, in form, was rendered against the defendants for the future annual damages, but

execution is only awarded for past damages and costs. Were the damages more than merely nominal, it might be difficult to sustain this portion of the judgment, so far as it affects the defendant who parted with his interest *pendente lite ;* but inasmuch as the future damages are assessed at a nominal sum, it is not perceived how that defendant can be injured by it, the more especially as it awards no execution therefor.

6. It is objected to the verdict that it fails to designate the height of the dam. But the statute does not require this to be done. It provides that, in a proper case, " the jury shall decide how much, if any, the dam shall be lowered." R. S., ch. 56, sec. 16. This is precisely what the jury did in the present case.

7. The remaining exceptions relate to the charge of the court to the jury, and to certain instructions asked by the defendants, but which the court refused to give. These will now be considered.

After stating to the jury at some length, and as we think correctly, the law applicable to the case should the jury find that the defendants and their grantors had uniformly flowed the plaintiff's land for twenty years, and for ten years, respectively, to the same extent as they were flowed when these proceedings were instituted (thus submitting to the jury issues made by the answers), the learned ·circuit judge further instructed the jury, as follows :

" There is still another principle of law that places limitation upon the right of the plaintiff to recover, and that limitation is this : The lands of the plaintiff were flowed by reason of the dam at the time he acquired title thereto, and he is not entitled to recover at all, unless it ·be for increased flowage since that time, and before the commencement of this action. His right to recover is limited to damages for any increase in the flowage of the land by means of the dam since he acquired title, and before the commencement of the action. If the plaintiff be entitled to recover, he can only recover damages for flowing

the ten-acre parcel of land, title to which he acquired March 4, 1868. As to the thirty-acre parcel, he is not entitled to recover .in this action, for the reason that he is not the sole owner of the same, but holds title thereto in common with another or others.

"Subject to the restrictions already given, the plaintiff is entitled to recover damages for flowing his land in case you shall find, from the preponderance of the evidence, that the dam has, within the ten years next preceding the commencement of the action, and since the 4th day of March, 1868, when he acquired his title, and before the commencement of this action, increased the water on his land and caused the same to flow such land to a greater degree and extent than it did previously to his acquiring title, and within ten years next prior to the commencement of this action, as already stated."

He also gave the following, at the request of the defendants:

"That as to the other ten acres, deeded by said Wing to plaintiff, February 14, 1868, plaintiff cannot recover unless his land, after the said date of said deed, and before the commencement of this action, February 11, 1870, was flowed or injured by reason of said dam, more than it was at and before the time of the purchase by him, to wit, at and before the 14th day of February, 1868."

Two other instructions on the same subject and to the same effect, but which also contained the proposition that the burden of proof was upon the plaintiff to show that the flowage of his lands had been increased since he became the owner thereof, were asked on behalf of the defendants and refused by the court. It is claimed that the jury should have been instructed concerning the *onus probandi,* but that they were not.

Whether the proposition contained in the proposed instructions be good law or otherwise (a point which admits of some doubt, but one which we do not here decide), we think that when the jury were told that the plaintiff could only recover

for the increased flowage of his land after he became the owner thereof, and that they were to find from a preponderance of the testimony whether there had been any such increased flowage by means of the dam in question, they were thereby instructed, in substance and effect, that the *onus probandi* in that behalf was with the plaintiff.

It will be observed that the instructions above quoted are in strict accordance with our decision in *Mead v. Hein*, 28 Wis., 533. We there held that the grantor of lands flowed by means of a mill dam at the time of sale, is entitled to the damages for the perpetual flowage of such lands to the extent the same were flowed when sold, and that the grantee can only recover for damages caused by an increase of such flowage after his purchase.

Although this case is not affected thereby, it is deemed proper to announce here that a majority of the members of the court are now of a different opinion, and will hold, when the question is again presented for determination, that the grantor of lands which are flowed at the time of sale, by means of a mill dam lawfully erected and maintained, but in respect to which no proceedings to assess damages have been taken, is entitled only to such damages as have accrued at the time of sale, unless he specially reserve future damages, and, in the absence of such reservation, the grantee is entitled to all damages which may accrue after the purchase of the lands flowed, and that each of them may recover such damages by proceedings under the mill-dam act. The case of *Mead v. Hein* must, therefore, to the extent here indicated, be considered as overruled. My opinion on this subject was quite fully expressed in *Pick v. The Rubicon Hydraulic Co.*, 27 Wis., 433, and it remains unchanged. Further discussion would be profitless. The decision of the question involved becomes a rule of property, and it should not be again disturbed, unless by the legislature. The maxim *stare decisis* should now be applied.

It should be further observed that my brethren do not in-

tend to disturb the rulings of this court in *Pomeroy v. The C. & M. R'y Co.*, 25 Wis., 641; and *Kutz v. McCune*, 22 id., 628. These cases are believed to have been correctly decided.

8. An instruction was asked by the defendants and refused, to the effect that if they and their grantors had constantly, for ten years before the commencement of the action, maintained the dam at a height which might raise the water on the plaintiff's land to a certain height, but which did not usually and constantly keep the water to that height, because of the leaky condition of the dam, or the rude construction of the machinery in the mills, or a lavish use of the water, then, if the dam was afterwards repaired, the machinery improved, or the water used in a different manner, or more economically, by means whereof the plaintiff's lands were flowed to a greater extent, without any increase in the height of the dam, this is no new flowing for which the defendants are liable.

This proposed instruction seems to be sustained by the decision of the supreme court of Massachusetts in *Cowell v. Thayer*, 5 Met., 253. But that case is believed to be in conflict with nearly all of the adjudged cases on the subject, and this court held the opposite doctrine in *Smith v. Russ*, 17 Wis., 227. The chief justice there said: " It is obvious that the statute of limitation did not begin to run upon the plaintiff's claim until their lands were flowed. Before that they had no action, and it was wholly immaterial whether the dam had been built a long or a short time." (p. 229). In like manner, it is wholly immaterial how high the dam in question was originally built. The true inquiry, in determining whether the defendants have acquired a right by prescription to flow the plaintiff's lands, is, How long have the lands been flowed by means of the dam? The height or capacity of the dam, or the time that has elapsed since it was erected, are immaterial, except as those facts may aid in the solution of this question. Many of the cases which sustain these views are cited in the brief of counsel for the plaintiffs.

One of the conditions specified in the proposed instruction is, that during the prescribed period of limitation, the water has *not* usually been kept up to the given height — in other words, that there have been during the period aforesaid, repeated interruptions in the use, by the defendants and their grantors, of the easement which the defendants now claim by prescription. A user upon which a valid prescription is founded, "must be continued, uninterrupted and adverse for the length of time prescribed by the statute." *Haag v. Delorme,* 30 Wis., 591. It is true, as observed in that case, that mere temporary or accidental interruptions of the user will not stop the running of the prescription, if there be no intent to abandon the easement, and the user thereof is resumed within a reasonable time after such temporary interruption. But the instruction under consideration was not framed with reference to interruptions of the latter kind, and we think that it was properly refused.

9. The court was asked to instruct the jury, that, in determining the plaintiff's right to recover, they were to consider the increased flowage of his land, at an ordinary stage of water only, and not the effects of freshets. The court refused so to instruct. It seems to us that the criticism of counsel for plaintiff, to wit, that the instruction does not limit the exemption from liability to the effects of those unusual and extraordinary freshets which human sagacity cannot foresee nor experience foretell, is a just criticism upon the proposed instruction. The law is believed to be settled that, in determining the right of the plaintiff to recover, the jury should consider the effect of those ordinary periodical freshets which can be foreseen with reasonable certainty. Angell on Water Courses, § 349, and cases cited. The instruction was therefore properly refused.

10. Something has already been stated to the effect that Alonzo Wing once owned both the mill dam and the lands of plaintiff alleged to be flowed. It appears that he owned both at the same time, and that he first conveyed the dam and mill

property.   On these facts, two propositions were submitted on behalf of the defendants, the last of them being submitted only in the contingency that the first should be overruled.   These propositions were : 1. That by conveying the mill property and water power while he owned the land in question, the right to flow such land to the extent that the same would be flowed were the dam raised to the full height authorized by law, passed as appurtenant to the mill property ; or 2. That the right to flow such lands to the extent that they were flowed when Wing conveyed such mill property, so passed to the grantee.

The court refused to give either of the these propositions to the jury.   The first is not a correct statement of the law, as is abundantly proved by the cases cited on behalf of both parties. The last proposition is doubtless good law.   It is well settled that if a person own a mill dam and water power, and also lands flowed by means of such dam, and he first convey to A. the mill dam and water power, and afterwards convey to B. the lands so flowed, neither the grantor nor B. can maintain an action to recover damages for such flowing, for the reason that the right to flow such lands to the extent they were flowed when the mill property was conveyed, passed by the conveyance, as appurtenant thereto.   But if the flowage be increased by means of the dam after the conveyance of the mill property, the owner of the lands may have his action for the damage caused by such increased flowage.

But the averment in the answers is, that the flowage was uniform for more than twenty years next preceding the commencement of the action ; and there is no testimony whatever tending to show that the dam raised the water higher in 1855, when Wing conveyed the last of his interest in the mill property, than it did in 1868, when the plaintiff became the owner of the ten acres to which the damages for flowing were restricted by the court.   The plaintiff was only permitted to recover for the damages caused by the increased flowage of the ten acres after he bought it in 1868, and it is clear that the right

to increase the flowage beyond what it was when the plaintiff bought the land, did not pass by the conveyance of the mill property by Wing.   Hence the second proposition above mentioned, although good law, was entirely immaterial as applied to the facts of this case, and it was not error to refuse to give it to the jury.

11. It was strongly controverted on the trial, and also in the oral and printed arguments of counsel for the defendants, in this court, that there had been any increase in the flowage of the ten acres in question, by means of the defendant's mill dam, after the plaintiff became the owner of the land and before this proceeding was commenced.   However the testimony may preponderate on this question, it must be conceded that there is testimony tending to show such increased flowage during that period; and although, were we deciding this question of fact, we might disagree with the jury, we have no power to disturb their verdict merely because, had we been jurors in the case, we should have found the fact differently on the testimony.   But we must not be understood as intimating that the jury ought to have reached the opposite conclusion.   We express no opinion on the subject.

It is believed that the foregoing observations dispose of all the material questions presented for our determination by this appeal.   And inasmuch as we find no fatal error in the proceedings in the circuit court, it follows that the judgment of that court must be affirmed.

*By the Court.*—It is so ordered.