Haag vs. Delorme and another.

HAAG vs. DELORME and another.

*Easement — Adverse user and possession.*

1. Apart from the special statute on that subject, a right to flow land by prescription can arise only from a user of such easement adverse *and without interruption* for the full period of twenty years.
2. *Any* substantial interruption of the enjoyment within the twenty years will defeat the easement, whether such interruption is caused by a disseizin, or fraud, or by other means; though a mere *temporary* or *accidental* interruption, (as one caused by the dryness of the weather, the washing out of a dam, the necessity for repairs, etc.,) will not stop the running of a prescription, if there is no intent to abandon the easement, and the user is renewed within a reasonable time.
3. Under ch. 84, Laws of 1862, (Tay. Stats., 818, § 42), the period of prescription is reduced to *ten* years.
4. Whether a prescriptive right to flow land can be acquired under this statute where the user is not *adverse*, is not here decided.
5. The statute, however, (which defines the period as "the ten years next preceding,") does not change the rule requiring the use to be continuous and *uninterrupted* during the period limited.
6. A pleading which avers an adverse use "for the full term of twenty years," but does not aver that the same continued "during the twenty (or ten) years next preceding," but rather shows an interruption during that time, *held* not to show any prescriptive right.

APPEAL from the Circuit Court for *Dodge* County.

This is an action under the Mill Dam Act to recover damages for flowing lands. The answer sets up several defenses. The plaintiff interposed a demurrer to the third defense therein, alleging as ground of demurrer, that the same does not state facts sufficient to constitute a defense to the cause of action set forth in the complaint. The circuit court overruled such de-

murrer, and from the order overruling the same the plaintiff has appealed.

Such third defense is as follows: " And for a separate and third defense the respondents show that many years before this action was commenced, one Solomon Juneau built the mill and mill-dam mentioned in the complaint; that subsequently some persons claiming the premises upon which said mill and mill-dam are situated, and said mill, mill-dam and the water power thereby created, through and under the said Solomon Juneau, duly mortgaged the same to one Jonathan D. Ledgard, to secure the payment of a certain sum of money due by them to him, and did afterwards, and subsequent to the due recording of said mortgage, and while said mortgage was still wholly unpaid, and was a valid lien and encumbrance upon said premises, without the knowledge or consent of the said Ledgard, enter into an agreement with the person who then owned the lands alleged in the complaint to be the property of the complainant, and under whom the complainant claims title to said lands, and with several other persons having lands overflowed by reason of said mill dam, by which said agreement, in consideration of a certain sum of money then paid to them by the said former owner of the complainant's lands and the said other persons, they were to relinquish the said water power and to open the said mill dam for the benefit of the owners of the lands thereby overflowed or injured. And said persons so owning the said mill dam and water power, subject to the said mortgage to said Ledgard, did thereupon, pursuant to such agreement, and without the knowledge or consent of the said Ledgard, and in violation of his rights under the said mortgage, open the said mill dam and take down a part of the same. That subsequently the said Ledgard as soon as he could lawfully do so, proceeded to foreclose his said mortgage in the United States District Court for Wisconsin, and obtained a judgment of foreclosure and sale in said court and purchased at the sale made by the United States marshal upon such judgment all of the said

mortgaged premises, including the said mill dam and water power, at a sum not exceeding the claim secured to him by said mortgage, the said mortgaged premises being without the said mill dam and water power insufficient to pay the said claim. That immediately thereupon the said Ledgard, conveyed in fee, for a valuable consideration, all of the said mortgaged premises to these respondents, who thereupon, within the shortest time possible, again erected and repaired the said mill dam and restored the said power.

And the respondents allege that they, and those under whom they claimed title to and are in possession of the said mill, mill dam and water power, for more than twenty years before and next preceding the commencement of this action, not even including into the said twenty years the interval in which said mill dam and water power were not used, so as herein before stated, have been in the actual, continued occupation of said mill, dam and water power, and have kept up and maintained said dam at the same height as at present, and used the same and the water power thereby created, for the purpose of propelling a mill below said dam, and have for all that time by reason of the erection and the keeping up and maintaining of said dam, caused the lands, alleged in the complaint to be the property of the complainant, to be flowed, injured and damaged as much and to as great an extent as now and as in the last three years before this action was commenced ; and that they have during all said period used, enjoyed and been possessed of the said mill, dam and water-power, and the flowing of and other injury to the said lands of the complainant, resulting therefrom, under a claim of title exclusive of any other right and adversely to the complainant and all other persons. And the respondents assert that by reason of the said premises the complainant is barred from maintaining this action by the statute of limitation in such case made and provided."

*Gillet & Taylor*, for appellant.

*L. T. Fribert*, for respondent.

LYON, J.   The nature, qualities and duration of the user, or enjoyment of an easement, which will constitute a valid right thereto by prescription, are precisely the same as are required by the statute of limitations to enable the occupants of lands to defeat the title of the true owner.   An occupancy of the lands, to have this effect, must be *continued, uninterrupted* and adverse, for the length of time prescribed by the statute.   By analogy to the general statute of limitations, and in the absence of any special statutory provision on the subject, the defendants will fail to show a right by prescription to flow the lands of the plaintiff, unless they aver and prove that they, or their grantors, have used and enjoyed such easement, adversely to the plaintiff, and without interruption, for the full period of twenty years before this action was commenced.   These principles are so nearly elementary, at least they are so perfectly well settled, that it is scarcely necessary to refer to authorities to sustain them.   A few cases, however, will be cited, not so much for the purpose of proving the existence of the principles, as to illustrate their application.   These authorities are taken almost at random from a multitude of others to the same effect.

*Rooker v. Perkins*, 14 Wis., 79; *Cooper v. Smith*, 9 Serg. & R., 26; Angell on Limitations, 385–92; *Abell v. Harris*, 11 Gill & Johns., 367; *Brandt v. Ogden*, 1 Johns, 156; *Doe ex dem. Clinton v. Campbell*, 10 id., 474; *Postlethwaite v. Payne*, 8 Ind., 104; *Sargeant v. Ballard*, 9 Pick., 251; Angell on Watercourses, Title "Adverse Enjoyment," § 210–14, and cases cited; *Sydnor v. Palmer*, 29 Wis.

It is entirely immaterial by what means the enjoyment of the easement was interrupted, whether by disseizin, or fraud, or any other means; if there was a substantial interruption thereof, it defeated the prescription so far as the previous user is concerned.   The question is not *how* the user was interrupted, but whether there was a time when it was in fact substantially interrupted.   *San Francisco v. Fulde*, 37 Cal., 349.   It is imma-

terial, also, in this case, that the grantor of the plaintiff and others paid the mortgagors for opening the dam and drawing off the water from their lands, after the execution of the mortgage to Ledgard, and that the water was so drawn off after the mortgage was executed, and without the consent or knowledge of the mortgagee, under whom the defendants claim. Under this state of facts, surely the plaintiff cannot be in any worse position, or the defendants in any better one, than they would have been in had the grantor of the plaintiff disseized such mortgagors, the latter acquiescing in such disseizin. It is well settled that the disseizin of a mortgagor operates in law as a disseizin of the mortgagee. *Poignard v. Smith*, 8 Pick., 272; *Dadmun v. Lamson*, 9 Allen, 85.

It is freely conceded that a mere temporary or accidental interruption of the user, occasioned by the dryness of the weather, the washing out of the dam, the necessity for repairs, and the like, will not stop the running of the prescription, if there be no intent to abandon the easement, and the user thereof is resumed within a reasonable time after such temporary interruption. In such cases the steps which are immediately taken to repair or rebuild the dam, or the holding and using of all the water there is in the stream, may well be held to be equivalent to an actual and uninterrupted flowing of the land. It is so to the extent of the ability of the mill owner. It is in fact, rather to be considered as a mere fluctuation in the extent of the user produced by uncontrollable natural causes, than as an interruption of such user which breaks its continuity and thus defeats the right thereto by prescription.

Thus far we have been considering the subject from the stand-point of the common law. But we have a statute relating thereto which may be applicable to this case, and which must therefore be considered. Chap. 184, Laws of 1862, enacts that, "No action for the recovery of damages for the flowing of lands, shall be maintained in any court in this state, when it shall appear that said lands have been flowed by reason of the

construction or erection of any mill dam for the ten years next preceding the commencement of such action." Tay. Sts., 818, § 42.

It may be that under the decision of this court in *Hanson v. Taylor*, 23 Wis. 547, which gives a construction to a very similar statute relating to highways, it should be held that a good prescriptive right to flow lands may be predicated of a user which is not adverse. On this point no opinion is here expressed. But however this may be, the law of 1862 does not abrogate the requirement of the common law, that the continual and uninterrupted user of the easement for the specified time is essential to a valid prescription. On the contrary the use therein of the words "for the ten years next preceding," etc., plainly shows an intent to leave the common law unchanged in this respect, for certainly it can not be truly said that the plaintiff's lands were flowed "for the ten years next preceding" the commencement of this action, if during some portion of such ten years they were not flowed. The language quoted necessarily imports the whole of the term.

The defense in the answer to which the demurrer was interposed fails entirely to aver that the lands of the plaintiff had been flowed by the defendants or those under whom they claim, by means of their mill dam, for the ten years next preceding the commencement of this action, and hence it fails to show that the action is barred by the statute. For a like reason it also fails to show that the action is barred by the common law.

The order overruling the demurrer to the third defense in the answer must be reversed and the cause must be remanded with directions to the circuit court to sustain such demurrer.

*By the Court.*—Ordered accordingly.