SCHEUBER vs. HELD and another.

PRESCRIPTION: *(1) Follows statute of limitations. (2) When rights acquired by, against the state.*

1. In this state *prescription* and *limitation* are substantially alike in their legal effects, both conferring title; and the period of prescription follows that of limitation fixed by statute.

2. A prescriptive right to flow lands by a mill-dam may be acquired by twenty years' uninterrupted user; and under sec. 26, ch. 138, R. S. 1858, where the twenty years had expired before the passage of ch. 105 of 1877, it conferred such prescriptive right even as against *the state*.

APPEAL from the Circuit Court for *Jefferson* County.

The defendants appealed from an order sustaining a demurrer to the second and third defenses set up in their answer. The nature of the action and the character of those defenses will sufficiently appear from the opinion.

For the appellants, there was a brief by *Jenkins, Elliott & Winkler,* and oral argument by *D. S. Wegg.* They argued substantially as follows: 1. The law of England adopted in this country at the time of the revolution, fixed the limitation of actions for lands at twenty years as to subjects, and sixty years as to the sovereign power. 32 Henry VIII, c. 2; 21 James I, cc. 5, 16; 9 George III, c. 16. In New York, whence we derive our statute of limitations, 21 James I, c. 16, limiting such actions as to subjects to twenty years, was in substance reënacted; but in 1788 (1 R. L., 184, sec. 1), the period in which the sovereign power should be barred was reduced from sixty to forty years. In the revision of 1830 it was reduced to twenty years (R. S. of N. Y., 1830, vol. 2, title 2, sec. 1, p. 292); and this remained unchanged until 1849, when, by ch. 438 of that year, it was enlarged to forty years, and has since so remained in that state. In this state there was no change of the common-law period of sixty years until the revision of 1858, which took effect January 1, 1859. Ch. 138 of that revision was the statute of limitations both as to real and personal actions; and the 26th section declares that "the limitations prescribed in this chapter shall apply to actions brought in the name of the state or for its benefit, in the same manner as to actions by private parties." This rule continued unchanged until 1877, when said section 26 was amended by ch. 105 of that year, by adding the following words: "provided that this section shall not be so construed as to enable any person to obtain title to any lands, tenements or hereditaments belonging to or owned by the state, by adverse possession, prescription or user." Sec. 4229 of the present revision reads thus: "The limitations prescribed in this chapter shall apply

to actions brought in the name of the state or for its benefit, in the same manner as to private parties; but no person can obtain title to real property belonging to the state, by adverse possession, prescription or user, unless such adverse possession, prescription or user shall have been continued uninterruptedly for more than forty years." The revisers in their notes to that section say: "Sec. 26, ch. 138, R. S. 1858, as amended by ch. 105 of 1877, and amended so as to make an adverse possession of forty years effectual against the state. This limitation has been adopted in other states, and it seems but just that the state should be barred of its right after so long an adverse claim." The sixty-year limitation was held by the English courts to bar the right of the king to file the information of intrusion (which was the form of action there in favor of the crown in such cases). Blackstone (3 Com., 307) says: " So that a possession for sixty years is now a bar even against the prerogative, in derogation of the ancient maxim, *nullum tempus occurrit regi.*" That the statute of New York bars the right of recovery as against the state in forty years, is evident as well from the words of the act as from the decisions in that state. *The People v. Clarke*, 10 Barb., 155, and 9 N. Y., 366. (See also *Piper v. Richardson*, 9 Met., 157; *Nichols v. Boston*, 98 Mass., 39; *Tufts v. Charlestown*, 117 id., 401; *Cutter v. Cambridge*, 6 Allen, 20.) From the construction placed on the act of New York before its adoption here, which is binding upon this court *(Perkins v. Simonds*, 28 Wis., 90; *Wiesner v. Zaun*, 39 id., 205), it necessarily follows that if the state should bring ejectment, the defense of adverse possession would avail if twenty years adverse possession had occurred after January 1, 1859. Less than twenty years had intervened between that date and this action. The state, however, acquired title to these lands in 1857; the right of action then accrued; and more than twenty years elapsed between that time and this action. The period of sixty years established against the crown by act of parliament had

become a part of the law of this state (*People v. Clarke*, *supra;* *Coburn v. Harvey*, 18 Wis., 147); and the said section 26 of the revision of 1858 merely abridged that period. But whether it be viewed in that light or as prescribing a limitation where none before existed, as a reasonable portion of the twenty years (viz., seventeen years) remained after the passage of the act, the statute will be construed as taking effect, and the limitation begin to run from the time when the cause of action first accrued. *Parker v. Kane*, 4 Wis., 1; *Falkner v. Dorman*, 7 id., 388; *Von Baumbach v. Bade*, 9 id., 559; *Smith v. Packard*, 12 id., 371; *Howell v. Howell*, 15 id., 55; *Mecklem v. Blake*, 22 id., 495; *Hyde v. Kenosha Co.*, 43 id., 129.

If, then, this were an action of ejectment, the state would clearly be barred. Do not the same principles apply to the acquisition of an easement to flow lands by prescription? At common law, before the passage of any statutes of limitation against the crown, grants and charters from the crown, and even acts of parliament, were presumed after an enjoyment beyond legal memory, notwithstanding the maxim *nullum tempus occurrit regi*. 3 Bac. Ab., "EVIDENCE: Presumptive Proof," p. 619; *Crimes v. Smith*, 12 Rep., 4; *Bedle v. Beard*, id., 5; *Mayor, etc., v. Horner*, Cowp., 102; *Eldridge v. Knott*, id., 214; *Roe v. Ireland*, 11 East, 280; *Goodtitle v. Baldwin*, id., 488; *Delorme v. Church*, 20 L. J., N. S., Ch., 183; *Att'y Gen. v. Ewelme Hospital*, 17 Beav., 366; *Johnson v. Barnes*, L. R., 7 C. P., 593; *Same v. Same*, L. R., 8 C. P., 527. This rule has been fully adopted in this country. 2 Whart. on Ev., § 1348; *Archer v. Saddler*, 2 Hen. & Mum., 370; *Hancks v. Tucker*, Taylor, 157, and 2 Hayw. (N. C.), 147; *Lessee of Allston v. Saunders*, 1 Bay (S. C.), 26. After the passage of acts of limitation, and early in the 18th century, the English courts adopted the rule of presuming grants where the use had existed for the time limited by the statute. After the lapse of that period, profert of the deed of an easement was dispensed with, and the deed was presumed to have been

made at some anterior date, and lost by time or accident. " So that now an enjoyment of an easement for the term of twenty years raises a legal presumption that the right was orginally acquired by title; and this though the jury should not find as a fact that any deed had ever been made, and although the user began in fact as an act of trespass." Washb. on Easem., 66. Prescriptive rights are now governed by the statute of limitations, the period of prescription varying with that of limitation. That the right to flow lands is an easement, and may be acquired by user for the period prescribed by the statute of limitations, is well settled in this state, at least as between private parties. *Rooker v. Perkins,* 14 Wis., 79; *Smith v. Russ,* 17 id., 227; *Waller v. McConnell,* 19 id., 417; *Ruehl v. Voight,* 28 id., 153; *Mead v. Hein,* id., 537; *Haag v. Delorme,* 30 id., 591; *Arimond v. G. B. & M. Canal Co.,* 31 id., 319; *Sabine v. Johnson,* 35 id., 198; *Aken v. Parfrey,* id., 250; *Arimond v. Canal Co.,* id., 46; *Cobb v. Smith,* 38 id., 21. We have found no case determining whether an easement may be acquired against the sovereign power in analogy to an act of limitations applying to that power. But if a subject may acquire the whole title as against the sovereign by adverse possession, why may he not acquire an easement within the same period of limitation? The greater includes the less. Moreover the statute declares that the limitations prescribed shall apply to actions brought in the name of the state or for its benefit, "*in the same manner as to actions by private parties.*" Now, since, as between private parties, the act limits the time as to easements, it can apply to the state in the same manner as to private parties only when so construed as to permit an easement to be acquired against the state. Again, the proviso added to sec. 26, ch. 138, R. S. 1858, by ch. 105 of 1877, declares that said section shall not be so construed as to enable any person to obtain title to any lands, tenements or *hereditaments* belonging to or owned by the state, by adverse possession, *prescription or*

*user.* This shows a legislative understanding that under sec. 26, as it previously stood, "hereditaments" (which include everything corporeal or incorporeal, real, personal or mixed, Co. Litt., 6a) might be acquired as against the state by "prescription or user." This legislative construction is of almost controlling effect so far as the state is concerned. *Bonham's Case,* 8 Rep., 117; *Munger v. Lenroot,* 32 Wis., 541; *Winslow v. Urquhart,* 39 id., 266. The twenty years having elapsed before the passage of the act of 1877, the easement had become vested, and was not affected by that act. *Sprecher v. Wakeley,* 11 Wis., 432; *Hill v. Kricke,* id., 442; *Knox v. Cleveland,* 13 id., 245; *Howell v. Howell,* 15 id., 55; *Osborn v. Jaines,* 17 id., 573; *Pleasants v. Rohrer,* id., 577. The same legislative construction of said sec. 26 is also shown clearly by sec. 4229, R. S. 1878, and the revisers' note to that section, above quoted.

Again, although the sovereign power is not, as a general rule, included within statutes of limitations, still ch. 184, Laws of 1862, limiting actions for flowage to ten years, should be construed as applying to the state, because when the mill-dam act was passed, the legislature knew that large tracts of land would necessarily be flowed in the erection of mill-dams; it also knew that such lands were to a great extent flowed when the act of 1862 was passed; it also knew that the state, by sec. 26 above cited, had abandoned its prerogative rights as to the limit of actions; and yet, with full knowledge of these facts, it made no reservation of the lands or rights of the state in the act of 1862.

2. A large quantity of the lands involved in this controversy were sold by the state under certificates in 1857, but patents were not issued until from 1870 to 1872. It is the settled law of this state, that, although the fee remains in the state until the patent is issued, yet the holder of the certificate is the real owner as against all persons but the state. He is entitled to the rents and profits, may transmit title by descent

or alienation, and may maintain actions against third persons, as if the absolute owner in fee. *Smith v. Mariner*, 5 Wis., 551, and Dixon's notes, p. 595; R. S., sec. 220, and revisers' notes; *Gunderson v. Cook*, 33 Wis., 551.. Under such circumstances, a grant to flow the lands will be presumed as against the owner of the certificate and his assignee, the subsequent patentee. *Munshower v. Patton*, 10 S. & R., 334; *Hammer v. Hammer*, 39 Wis., 182.

3. The limitations in ch. 138, R. S. 1858, run against the state the same as a private person, and that act provides as to all actions concerning "real property." Real property is defined (sec. 13, ch. 5, R. S. 1858), as "coëxtensive with lands, tenements and hereditaments;" and this definition certainly includes easements.

For the respondent, there was a brief by *I. W. & G. W. Bird*, and oral argument by *G. W. Bird:*

1. As against the state no rights can be acquired by prescription. Angell on Lim., § 37; Angell on W. C., § 254, and notes; *Union Mill, etc., Co. v. Ferris*, 2 Sawyer, 176. 2. Statutes of limitation do not apply to the state unless it is expressly mentioned. Hence, in computing the ten years under ch. 184, Laws of 1862, no part of the time while the state owned the land is to be included. Angell on Lim., §§ 34–41; *Webber v. Harbor Comm'rs*, 18 Wall., 57; *Gibson v. Chouteau*, 13 id., 92; *Des Moines v. Harker*, 34 Iowa, 84, and authorities above cited. Sec. 26, ch. 138, R. S. 1858, applies to the state such limitations only as are prescribed in that chapter. But the limitation applicable here is that prescribed by the act of 1862. Moreover, sec. 26, while it made the limitations of the chapter in which it occurs, applicable to actions "brought in the name of the state or for its benefit," did not apply them to actions brought in the name of the grantee of the state who had taken his patent within the period of limitation. 22 Wis., 363. Again, by ch. 105 of 1877, the legislature specifically provided that the limitations

set up in the answer should not apply to the state. Again, by ch. 550 of 1865, appearing as sec. 7, ch. 21 of 1871 (Tay. Stats., pp. 630, 677, §§ 56, 58 *a*), and continued as sec. 222, R. S. 1878, the patentee is authorized to maintain an action, for any trespass or injury committed upon the lands before his patent shall have been issued, " in the same manner and with the like effect, and he shall be entitled to like damages, as if such injury or trespass had been committed after the patent had issued." If the statute were to commence running before the issue of the patent, the patentee could not bring his action " in the same manner and with the like effect," etc., as here provided, because the running of the statute might bar the action. Moreover, this court has held in substance that the limitations pleaded do not apply to the state. *Waller v. McConnell*, 19 Wis., 417; *Zeidler v. Johnson*, 37 id., 335.

3. Neither statutory nor prescriptive time commenced to run against the holders of the certificates while the lands were held on certificates. The respective interests and mutual relations of the state and certificate-holder are fixed by statute. The fee of the land remains in the state until the patent issues. The certificate-holder is entitled to the possession, and may bring actions for certain rents, etc., and recover damages for injury to the land. He is prohibited from cutting down, destroying or carrying away any wood, timber or mineral. Upon forfeiture, the certificate is void, and the state resumes possession, and may sue the certificate-holder for waste or any unnecessary injury to the land. R. S. 1849, ch. 24, secs. 15, 18–21; Laws of 1856, ch. 125. The possession of the certificate-holder is therefore subordinate to the title of the state; in fact is the possession of the state. The relations of the two are analogous to those of landlord and tenant. Hilliard on Vendors, ch. 33, p. 97; *Wright v. Roberts*, 22 Wis., 161. Plaintiff's possession before the issuing of the patent was not adverse to the state. *Clements v. Anderson*, 46 Miss., 581; *Jackson v. Camp*, 1 Cow., 605; *Jackson v. Johnson*, 5 id., 74;

*Jackson v. Bard*, 4 Johns., 203; *Woods v. Dille*, 11 Ohio, 455. If the statute did not run against the state, the mere transfer of its right to the possession would not set the statute in motion; and ch. 520 of 1865, with the acts before cited continuing it in force, indicate a clear intention to keep the statute from running while the lands were so held. The statute does not run while the state is jointly interested with another. *Glover v. Willson*, 6 Barr, 290. To set it running, the possession of the party claiming its benefit must be adverse, not merely to the owner's tenant, but to the owner in fee himself. Angell on Lim., §§ 33, 390. The use and enjoyment of what is claimed by prescription, must be of something which the party against whom it is claimed could have granted to the party claiming it. *Cobb v. Smith*, 38 Wis., 21; *Peterson v. McCullough*, 50 Ind., 35. Again, time does not begin to run against a party until he can bring the action claimed to be barred. Angell on Lim., §§ 42, 54–63; *Smith v. Russ*, 17 Wis., 227; *Jackson v. Schoonmaker*, 4 Johns., 390; *Jackson v. Sellick*, 8 id., 262; *Jackson v. Johnson*, 5 Cow., 74. The certificate-holder could not bring this action, because the statute required it to be brought by the owner of the land. Tay. Stats., ch. 56, secs. 4, 15–18; R. S., secs. 3377–86.

ORTON, J. This action is brought to recover damages to the lands of the plaintiff by being overflowed by the erection and maintenance of the mill-dam of the defendants below the same, on Bark river, in Jefferson county. The answer, after a general denial, sets up and alleges, as to a portion of the lands, that they had been so submerged, used and enjoyed adversely to the plaintiff for more than twenty years, a part of which time they were owned by the state as a part of the swamp-land grant; and as to the other lands, that they had been so submerged, used and enjoyed for more than twenty years, a part of which time they had been held under certificates of sale from the state.

For the purpose of this decision, the question as to the rights of the purchaser under these mere certificates of sale is immaterial, and will not be considered.

The main and important question raised by the demurrer is, whether twenty years' prescription, by adverse possession and use of the lands for such purpose, when they belonged to the state for a portion of such time of prescription, is a defense to the action. In other words, is the state bound and barred, like any other party in such an action, by prescription as such?

Without discussing or following the history of the doctrine of prescription in England and in this country, as a general subject of inquiry, it may be said in brief: *First.* Prescription at common law was strictly applicable only to *incorporeal* hereditaments, while, as to the land itself, the period of adverse possession and enjoyment was fixed by the statute of limitations. *Second.* The analogy between prescription and limitation was so close and perfect that the period of prescription has now come to depend upon and follow that of limitation, very generally, in this country. *Third.* Prescription for the requisite period presupposed a deed having been given anterior to the time of prescription, and established a presumption of a grant as a *presumptio juris et de jure;* while limitation raised no such presumption, but operated merely as an extinguishment of the remedy. The former conferred and established a right and title, while the latter only barred a recovery. This was the former distinction, but which has long since been lost by the decisions in this and other states; and now adverse enjoyment for the period of limitation extinguishes not only the *remedy* but the *title* of the former owner, in lands as well as hereditaments. It is said by Chief Justice DIXON, in *Knox v. Cleveland*, 13 Wis., 246, " that the *right* or *title* of a party to property which is adversely held and claimed by another, is barred and cut off by his neglect to prosecute within the period prescribed by the statute of limit-

ations, and that such neglect operated to *divest* and *transfer* it to the adverse claimant;" and the same principle is recognized in *Sprecher and another v. Wakeley*, 11 Wis., 432; *Hill v. Kricke*, id., 442; *Brown. v. Parker et al.*, 28 Wis., 21, and in many other cases in this court. *Fourth*. The analogies between prescription and limitation, in this state at least, not only establish the period of prescription and cause them to operate alike in conferring title, but make them so near alike in qualities, principle, purpose, effect and consequence, as to completely blend them together, and they are used interchangeably as being substantially the same. In *Smith and others v. Russ and others*, 17 Wis., 227, a case like the present, for flowing lands by means of a mill-dam, what is pleaded in the answer as *prescription*, as in this case, is called and treated as the *statute of limitations* in the opinion; and in *Haag v. Delorme and another*, 30 Wis., 591, a case of like flowage, Mr. Justice Lyon says, in his opinion: "The nature, qualities and duration of the user and enjoyment of an easement, which will constitute a valid right thereto by prescription, are *precisely the same* as are required by the statute of limitations to enable the occupant of lands to defeat the title of the true owner;" and then holds that "the occupancy of the lands for such purpose must be *continued, uninterrupted and adverse*, for the length of time prescribed by the statute." This clearly implies that the statute of limitations applicable to real actions affecting the title of the lands, is equally applicable to an action like the present; and the language of the statute itself may well bear such an interpretation. The former statute in these respects is the same in the revision; and section 4206 provides that "civil actions can only be commenced within the periods prescribed in this chapter," clearly implying and comprehending *all* civil actions, including this action as well. Section 4208 provides that "no defense or counterclaim founded upon the title to *real property* or to *rents* and *services* out of the same, shall be effectual," etc.

"Real property" is defined by the statute "to include lands, tenements and hereditaments, and all rights thereto and interests therein." This language is certainly broad enough to include the rights and interests in lands involved in this action, and, as we have seen, this court, in *Haag v. Delorme, supra,* and in other cases, has given such a construction to it.

The legislature, then, might very well adopt the same construction, and we think they have done so, in the legislation placing the state under the limitations of the statute as other parties, and by force of such construction making the state subject also to like prescription. It is provided in section 26, ch. 138, R. S. 1858: "The limitations prescribed in this chapter shall apply to actions brought in the name of the state, or for its benefit, in the same manner as to actions by private parties."

By section 1, ch. 105, Laws of 1877, the above section is amended as follows: "Provided, that this section shall not be so construed as to enable any person to obtain title to any lands, tenements or hereditaments belonging to or owned by the state, by adverse possession, *prescription,* or user." This amendment most clearly implies that before and without it the state was, equally with other parties, subject both to the statute of limitations and prescription, and that such an amendment was necessary to exempt the state from the consequences of prescription; and to that extent the above sections 4206 and 4208 would also be amended. The amendment of this section 26, found in the present revision as part of section 4229, has equal significance of this same construction: "But no person can obtain title to real property belonging to the state by adverse possession, prescription or user, unless such adverse possession, prescription or user shall have been continued uninterruptedly for more than forty years."

We conclude, then, that, under the effect of said section 26, ch. 138, R. S. 1858, the adverse possession and user of the lands in question, by means of the mill-dam, for more than

twenty years, would be protected both by the statute of limitation and by prescription, and confer a title to the lands for such use upon the defendants, as against the state and other parties; and if such period had expired before the amendment of 1877, such title and right had become vested in the defendants.

This question involves only a construction of our own statutes, at most, and such a construction seems to have been established, in principle, by this court as well as by the legislature, and appears to be alike reasonable and just. No one doubts that the state, at any time within the period of prescription or limitation, might bring an action like any other party; and there is no reason why the presumption of a grant to the adverse claimant, from a delay to bring such action for over twenty years, should not prevail against the state as against other parties.

What may be the effect of the present statute as to prescription, or the former statute of limitations relating to real actions, upon the rights of the state, is not here to decide, but it may be that both are extended to forty years.

For other authorities bearing upon the subject see 3 Washburn on Real Property, 51; *Tyler v. Wilkinson*, 4 Mason, 402; *Lemon v. Hayden*, 13 Wis., 159; *Wyman v. The State*, 13 Wis., 663; *Rooker and another v. Perkins*, 14 Wis., 79. The court has been greatly aided in arriving at a proper decision of the important question in the case by the able and instructive arguments of the learned counsel on both sides.

*By the Court.* — The order sustaining the demurrer to the answer is reversed, and the cause remanded for further proceedings according to law.