MURRAY, Respondent, vs. SCRIBNER, Appellant.

*November 8 — November 22, 1887.*

*(1) Appealable order. (2, 3) Mill-dams: Flowage of land: Damages: Prescriptive right: Inconsistency of special verdict.*

1. A mere interlocutory order for judgment is not appealable, although it denies the motion of one party for judgment and grants that of the other.

2. A special verdict assessing damages for the flowage of land by a mill-dam is not inconsistent merely because the prospective damages are much greater for a similar period than the past damages.

3. The extent of a prescriptive right to flow land by means of a mill-dam is not determinable merely from the height of the dam and the head of water at the dam, but is only commensurate with such actual flowage, especially where the land alleged to be flowed is situated some miles above the dam; and the mere fact that the dam and the water in the pond were maintained at the same height does not show that the land was continuously flowed thereby to the same extent.

APPEAL from the Circuit Court for *Green Lake* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

The defendant erected and maintains a mill-dam upon and across the west branch of the Fond du Lac river, thereby creating a water-power to run his flouring-mill. The plaintiff owns a farm upon the river a few miles above. July 3, 1882, this action was commenced under the mill-dam law for damages to the farm caused from flowage by reason of the dam. The defendant answered, and, in effect, denied such flowage or damage and alleged that the dam and the waters of said stream above said dam had been maintained at the same height continuously for more than twenty-five years before the commencement of the action. By amendment the defendant further answered, to the effect that he and his grantors had peaceably, under a claim of right and adversely to all others, maintained said dam and the waters in said river to the same height uninterruptedly and continuously for ten years and more next preceding January 1, 1864, and ever since, and for ten years next preceding January 1, 1874, and ever since.

Upon the trial, the jury returned a special verdict to the effect (1) that the plaintiff was the owner of the farm; (2–5) that by reason of the maintenance of the dam and obstruction of the river by the defendant between July 1, 1879, and October 1, 1886, said farm had been injured by the overflow of half an acre, and the soakage of forty acres, to the amount of $17.50; (6, 7) that the dam should not be

lowered any, nor left open any part of the year; (8, 9) that so long as the dam is used in conformity with the verdict, the payment of $30 annually would be a just and reasonable compensation, or $300 in gross for the perpetual right to so use the same; (10) that the defendant maintained the water in his mill pond by means of his mill-dam, for the use of his mill, openly, peaceably, and adversely, under claim of right, at the same height for the ten years next preceding the commencement of this action, except when prevented during said ten years by casualty, leakage, drought, evaporation, or the use of water for his mill; (11) that he did the same subject to the same exceptions, for the ten years next succeeding the building of his dam in 1864; (12) that he did the same subject to the same exceptions, for some consecutive ten years after the rebuilding of the dam in 1864 and before the commencement of this action; (13–16) that the defendant never increased the height of water in his pond since May 1, 1864; (17–19) that the defendant and prior owners raised and held the dam at the same efficient height from its erection in 1856 to the commencement of this action — twenty-six years — except when prevented by casualty; (20) that the water which flows the plaintiff's land comes from the river and other lands above his, or one of them; (21) that the full head of the defendant's water-power is at a bolt-head, $3\frac{1}{2}$ inches below the top of a post described; (22) that the lowest point of the plaintiff's land is $1\frac{1}{2}$ inches higher than a level line from the full head of the water-power; (23) that the mill pond at full head flowed the plaintiff's land before the drainage of Rosendale marsh, in 1879, and later, and before the completion of the ditches on plaintiff's land and other lands above his, in 1876 and later, on other occasions than extraordinary and unusual freshets; (24) that the flow of water in the river above and along plaintiff's land has not been largely increased beyond the river's natural capacity since

1879, by the artificial drains last mentioned; (25) that the flowage does not occur solely in freshets, whether ordinary or extraordinary; (26) that the primary and proximate cause of the flowage is the defendant's mill pond; (27–28) that the plaintiff's land was naturally half marsh and half bottom, and before the erection of the dam was subject to flowage by freshets; (29) that no part of said lands were *continuously* flowed or otherwise injured for a period of ten years next prior to this action by reason of the dam.

Thereupon the defendant, upon the pleadings, record and special verdict, moved the court to set aside said verdict and for a new trial, on the ground that the same was inconsistent and contradictory, which was, by order entered November 20, 1886, denied by the court; and thereupon the plaintiff and defendant severally moved the court, upon the pleadings, the record and said special verdict, for a judgment upon said special verdict, each in his own favor; and upon the hearing thereof the court, by order entered November 20, 1886, denied the defendant's motion, without costs, and granted the plaintiff's motion, and ordered that he have judgment against the defendant for the damages awarded and costs to be taxed. The defendant appeals from each of said orders so entered November 20, 1886.

*Charles E. Shepard*, for the appellant.

*Geo. P. Knowles*, for the respondent.

CASSODAY, J. A mere interlocutory order for judgment is not appealable. *Webster-Glover L. & M. Co. v. St. Croix Co.* 63 Wis. 647; *Hoey v. Pierron*, 67 Wis. 267; *Bourgeois v. Schrage*, 69 Wis. 316; *Goldmark v. Rosenfeld*, 69 Wis. 469; and the cases referred to in the opinions cited. On the contrary, an appeal to this court by a party aggrieved, from an order, can only be from such an order as is defined in sec. 3069, R. S., as being appealable. Sec. 3048, R. S.; 63 Wis. 650. Among the orders thus made appealable is "an order

affecting a substantial right, made in any action, when such order, in effect, *determines* the action and *prevents* a judgment from which an appeal *might be taken.*" Subd. 1, sec. 3069. Here the order does not "determine the action," much less "prevent" such judgment. On the contrary, it orders a judgment which will determine the action and from which an appeal may be taken. No judgment has as yet been entered. The mere fact that the order for judgment includes an order denying the defendant's motion for judgment, does not make the order appealable, since every order for judgment wholly in favor of one party necessarily precludes any judgment in favor of the other party. In other words, the two orders mentioned are together, in effect, but one order for judgment in favor of the plaintiff and against the defendant. Such orders, therefore, were not appealable, and hence so much of the appeal as relates to them is dismissed.

2. But the order refusing to set aside the verdict and grant a new trial is appealable. Subd. 3, sec. 3069, R. S. Upon this appeal from that order we are only at liberty to consider whether the several findings of the jury are so inconsistent and contradictory as not to authorize a judgment thereon in favor of the plaintiff. The past damages found were such as accrued after July 1, 1879. It is claimed that if such damages were the extent of the injury for the period mentioned in the verdict, then the prospective damages found by the jury, as stated, both annually and in gross, were excessive. But with no bill of exceptions of record we are unable to reach any such conclusion. Besides, to say that past annual damages is a certain criterion of the amount of prospective annual damages, would obviate the necessity of any trial or verdict as to the latter class of damages. The statute, however, contemplates separate findings as to each class of damages. Sec. 3381, R. S. This seems to indicate that each class of damages rests upon its own basis.

It is claimed that the tenth, thirteenth to the sixteenth, twenty-third, twenty-fourth, twenty-fifth, twenty-sixth, and twenty-eighth findings, above stated, in effect establish the defendant's claim of ten years' adverse user under a claim of right next preceding the commencement of this action; and that the twenty-ninth finding mentioned is in direct conflict with such other findings, and to the effect that there was no such continuous adverse user or flowage under such claim of right for that period. This claim is based upon the assumption that it appears from such other findings that such flowage of the plaintiff's land had been continuous and uninterrupted for the ten years mentioned. But such assumption is, as we think, unauthorized from such findings. It nowhere appears in the record that there was any such ten years' continuous and uninterrupted adverse user or flowage under such claim of right during that period. We are not at liberty to infer that the mere maintenance of the dam, and the water in the pond, at the same height for the period mentioned, necessarily caused the plaintiff's land to be flowed during the whole of that period to the same extent that it was flowed subsequently to July 1, 1879. To do so would be to commit the same error for which the judgment in *Smith v. Russ*, 17 Wis. 227, 84 Am. Dec. 739, was reversed. It is the flowage of the land which sets the statute of limitations running. Subd. 3, sec. 4221, R. S.; *Johnson v. Boorman*, 63 Wis. 273. To be available as a defense, it "must be continued, uninterrupted, and adverse, for the length of time prescribed by the statute." *Haag v. Delorme*, 30 Wis. 594; *Sabine v. Johnson*, 35 Wis. 203; *Scheuber v. Held*, 47 Wis. 350. The extent of the right thus acquired by adverse user is not determinable merely from the height of the dam and the head of water at the dam, but is only commensurate with such actual flowage. *Mertz v. Dorney*, 25 Pa. St. 519; *Carlisle v. Cooper*, 21 N. J. Eq. 594; *Gilford v. Lake Co.* 52 N. H. 265; *Powell*

*v. Lash,* 64 N. C. 458. Especially should such be the rule
where, as here, the land alleged to have been flowed is sit-
uated some miles above the dam.    Here there is an absence
of any finding that the land was flowed at all prior to 1876;
and hence there is no finding of any such adverse user as
required by the statute.    Certainly, in the absence of any
bill of exceptions, we cannot say that there is any such in-
consistency or contradiction in the findings as requires that
the verdict should be set aside.

*By the Court.*— The order of the circuit court refusing to
set aside the verdict and grant a new trial is affirmed.