JENKINS, Circuit Judge,
upon this statement of the case, delivered the opinion of the court.
The trial court held that under the power of attorney executed by the defendant in error no authority existed to reserve grounds for a public square, that such a use is not included within the designation of “charitable purposes,” and that the enumeration of the cases for which reservation was authorized was in exclusion of all others. The court also ruled that the lawful execution of a plat required by the statute (Rev. St. Wis. 1849, c. 41) is the acknowledgment by the proprietor before the proper officer, and that, failing strict compliance with the statute, there arises no statutory conveyance. It was held that the acknowledgment here was invalid, upon the ground that it purports to be the acknowledgment of the attorney in fact with respect to his own act, and not his acknowledgment of the plat as the act and deed of his principal. Because of these two defects,— the want of authority to reserve land for a public square, and the defective acknowledgment,—the court ruled that the record of the plat does not constitute a conveyance within the provisions of the statute, and is not an instrument giving color of title under which adverse-possession for a period of 10 years prior to suit would bar an action by the rightful owner.
The statute as it then stood contains no requirement for any certificate or writing by the proprietors, or any requirement for any execution of the plat by them, other than as therein expressed. The survey and the certificate thereof by the surveyor, the making of the plat, its acknowledgment and the certificate thereof by the officer indorsed thereon, and the record of the plat, are the things required by the statute. It is not doubted that the peculiar mode of conveyance provided for by the statute must be substantially complied with to render the plat operative to vest title. We do not, however, stop to consider the correctness of the ruling that the plat in question was defectively executed or acknowledged, and that it did not therefore pass title, for the reason that, upon the assumption of the correctness of those rulings, we have reached the conclusion that the instrument is one giving color of title within the statute respecting the limitations of actions. These provisions (Rev. St. Wis. 1878, §§ 4211, 4218, 4215) are as follows:
*269 “Sec. 4211. Where the occupant, or those under whom he claims, entered into the possession of any premises under claim of title, exclusive of any other right, founding such claim upon some written instrument, as being a conveyance of the premises in question, or upon the judgment of some competent court, and that there has been a continual occupation and possession of the premises included in such instrument or judgment, or of some part of such premises,, under such claim, for ten years, the premises so included shall be deemed to have been held adversely; except that when the premises so included consist of a tract divided into lots, the possession of one lot shall not be deemed the possession of any other lot of the same tract.”
“Sec. 4213. When there has been an actual continued occupation of any premises under a claim of title, exclusive of any other right, but not founded upon any written instrument, or any judgment or decree, the premises so actually occupied, and no other, shall be deemed held adversely.”
“Sec. 4215. An adverse possession of ten years, under sections 4211 and 4212, or of twenty years under the two last preceding sections [4213 and 4214], shall constitute a bar to an action for the recovery of such real estate so held adversely, or of the possession thereof.”
Sections 4212 and 4214 prescribe the requisites of possession. The plat in question bad upon it a certificate or declaration executed by the proprietors under their respective seals. It was executed by and in the name of Daniel Cameron, by Peter Cameron, his attorney in fact. This certificate acknowledges the plat as the act and deed of Daniel Cameron “for the uses and purposes expressed on the same and contemplated by the law authorizing the laying out of towns and platting and recording the same.” It is followed by the certificate of the notary, which states that “Peter Cameron, attorney in fact for Daniel Cameron,” and the other proprietors mentioned, are known to him as the identical persons who laid out the addition to the town of La Crosse and made the annexed plat thereof, and the persons who signed and sealed the above acknowledgment thereof (referring to the certificate executed by the proprietors) and acknowledged the plat as and for their act and deed.
It is true that the statute with respect to the execution and recording of plats as it then stood did not require this written declaration by the proprietors. It did not, however, forbid it. It prescribes certain acts the doing of which should be effectual to convey the title; but, to determine whether the instrument in question furnishes color of title, we must look to the whole and to every part of the instrument to see if upon its face it purports to convey a title, and this whether the things apparent upon the instrument are or are not required by the statute. The question is not whether the instrument in law conveys title. If that were the question, the statute of limitations would here have no function and need not be considered. These statutes of repose presuppose defects in or total want of title, and are enacted to establish the claim of one in adverse possession under defective title, or under an instrument which in law conveys no title. The question is, therefore, whether this instrument purports to dedicate this land for a public square, not whether it was in the law effective to dedicate. The acknowledgment was, perhaps, informal, and therefore the execution was in a sense defective. It probably should have appeared that Peter Cameron acknowledged the plat as the act and deed of his principal. Notwithstanding, if we find here the substance of the requirements *270 of the statute, we need not be concerned with respect to defects in the instrument, for the law required no particular form of acknowledgment. State v. Schwin, 65 Wis. 207, 218, 26 N. W. 568. “It is the policy of the law to uphold certificates when substance is found, and not suffer conveyances or the proof of them to be defeated by technical or unsubstantial objections.” Carpenter v. Dexter, 8 Wall. 513, 526. If this defective execution of the plat be not validated by the curative act (Sanb. & B. Ann. St. Wis. § 2216c), it is clear to our minds that, apart from legal subtlety, the instrument purports to be made in pursuance of and in conformity with the statute, and to be the act of and to be acknowledged by Daniel Cameron, through his attorney, for the purposes therein expressed. .It is clear that Daniel Cameron, by his attorney in fact, joined with the other proprietors in the making of the plat. It is also clear that his attorney in fact undertook to acknowledge it for him before the notary, as he had by that attorney acknowledged it in writing under his seal upon the face of the plat. If, upon strict construction or technical reading of the notary’s certificate, it must be held that the attorney in fact acknowledged it as his own act and deed, and not as the act and deed of his principal, it is none the less true that so to read it is to sacrifice substance to form. To deny this instrument the quality of color of title, because of this manifest misprision of the notary, would be, we think, to render abortive the statute of limitation under consideration, which only requires possession under claim of title founded upon some written instrument as being a conveyance of the premises in question. The instrument need not be validly executed or acknowledged for the purposes of adverse claim thereunder. It is sufficient if upon its face it purports to conform to the law, and to convey the dedicated premises described therein. Thus, in Williams v. Association, 79 Wis. 524, 48 N. W. 665, the objection was made that the plat there in question was void because the acknowledgment was not certified by the officer under his hand and seal, as required by the statute. The court held that the seal of the officer was necessary, and could not be dispensed with, but that (page 530, 79 Wis., and page 666, 48 N. W.) “the plat was certainly an instrument in writing purporting to convey real estate,” and that the defect was cured by the act (Sanb. & B. Ann. St. Wis. § 2206a) which validated every instrument in writing theretofore made which purported to convey real estate, which had not been sealed. And so, also, in Cawley v. Johnson, 21 Fed. 492, 493, it was ruled that a receiver’s receipt upon entry of land was sufficient color of title, under the statute of Wisconsin, to support an adverse possession thereunder; the court saying, “Under the statute, it is not essential that the written instrument should constitute in itself an actual title or conveyance, but only one upon which may be founded a claim of adverse possession as being a conveyance.” It is immaterial that the grantor had no title to convey, or had no authority in law or in fact to convey one, or that the instrument was défectively executed. The instrument gives semblance or color of what its effect would be if all necessary requisites of a perfect title and a good conveyance were present. It should be borne in mind that it is not “the instru *271 ment which gives the title, but adverse possession under it for the requisite period with color of title.” McMillan v. Wehle, 55 Wis. 685, 693,13 N. W. 694. The only quality demanded of the instrument is that it should purport to convey or to dedicate; that it exhibits sufficient upon which a claim of title may in good faith be rested as warrant for entry into possession, for color of title excludes the idea of rightful title. The fact of possession, and the quo animo it was commenced or continued, are the only tests. Smith v. Burtis, 9 Johns. 175, 180.
We do not deem the question to be one which is now at large. As we read the decisions, it is the settled law of the state of Wisconsin that possession for the requisite period under an instrument absolutely void upon its face will draw to it the protection of the statute. Jones v. Billstein, 28 Wis. 225; North v. Henneberry, 44 Wis. 306; McMillan v. Wehle, 55 Wis. 685, 13 N. W. 694; Meade v. Gilfoyle, 64 Wis. 19, 24, 24 N. W. 413; Kelley v. McKeon, 67 Wis. 561, 565, 31 N. W. 324; Whittlesey v. Hoppenyan, 72 Wis. 140, 145, 39 N. W. 355. However groundless the supposed title may be, it is sufficient for the purpose of adverse possession that the entry be under color of title. However defective its execution or acknowledgment, and however insufficient upon its face to convey title, the instrument none the less purports to convey title, pretends conformity to the law, and is sufficient for color of title under the statute in question. Northrop v. Wright, 7 Hill, 476. This conclusion derives support from the language of the statute concerning that adverse possession which is not under a written instrument (Rev. St. Wis. § 4213). There, as under section 4211, the entry and occupation must be “under a claim of title exclusive of any other right.” We take it that the phrase employed, “claim of title,” means only a claim of right,—a claim to the right of possession,—since otherwise section 4213 would be abortive and without effect, because there can be no legal title to lands by parol. Mere possession is a degree of title, although the lowest and most imperfect. Bouv. Law Dict. “Title.” Possession, as defined by the statute, and under claim of right theretp, satisfies the requirement of the law; and when that claim is founded upon a written instrument which purports, however imperfectly, to grant the possession claimed, there is color of title sufficient to support the claim and the possession thereunder.
It is, however, urged that the statute of limitations cannot be invoked by the plaintiff in error, because, as it is said, the entry and possession protected by the statute must be “under claim of title exclusive of any other right,” which language is construed by counsel to mean that the claim must “usurp the entire dominion, and exclude every other title and every other right.” If this construction be correct, the contention of counsel must be sustained, because the instrument under which possession was taken and is claimed purports to grant a qualified title only; and it is not disputed that the claim of the plaintiff in error is limited to the holding of the demanded premises in trust for the public, and for the purposes of a public square. Such possession is in subordination to the title in fee. The instrument under which it is claimed does not furnish color *272 of title beyond the estate which it purports to convey; for, to constitute adverse possession, entry must be made and the possession held with defined claim of title, and the title acquired cannot rise above the claim. Pepper v. O’Dowd, 39 Wis. 538. The claim here was that of an easement only,—not a corporeal interest, but an incorporeal right. This claim consists with, and is not adverse to, the claim of the owner that the right of soil remains in him, and that, when the use or enjoyment claimed is relinquished or abandoned, the property, with all its incidents and appurtenances, will revert to the owner. Gardiner v. Tisdale, 2 Wis. 153. Such a claim cannot, therefore, in a broad sense, be adverse to the title in fee. The question, however, still remains, whether the claim is not adverse to the owner of the fee, so far as respects the claim of right asserted. The claim of title must be exclusive of any other right; but does not this language mean that the claim must be in exclusion of any other right to that which is claimed, and not in exclusion of the right or title which is recognized by the claim? If one enter into possession of premises, claiming under an instrument which purports to convey a life estate, and hold possession thereunder for the prescribed period, may he not claim the benefit of the statute, as against any other claim to that life estate and possession thereunder? Such possession held in subordination to the title of one, it is ruled, may still be hostile and adverse to the title of all others. Hayes v. Martin, 45 Cal. 563; McManus v. O’Sullivan, 48 Cal. 15; Francoeur v. Newhouse, 13 Fed. 236; Railroad Co. v. Kranich, 52 Fed. 911; Furlong v. Garrett, 44 Wis. 111, 122. These decisions could not be upheld under the construction contended for by counsel, that the claim must usurp the entire dominion, and exclude every other title and every other right, because the claim and possession in the cases referred to were not in exclusion of every other right, nor hostile to the title of one. If then, as we think, the correct interpretation of the statute is that the claim must be in exclusion of any other right to that which is claimed, why may not one claim adversely with respect to qualified ownership against the owner of the fee title, who seeks possession in denial of the qualified ownership asserted? May not a tenant for years under an instrument purporting to be a lease executed by a stranger to the title hold adversely, as against the owner of the title seeking possession during the term specified in the instrument? Such claim is not hostile to the title in fee, but disputes the right of the owner of the fee title to the possession of the land during the period specified in the instrument; and a plaintiff in ejectment must not only have a valid, subsisting interest in the premises claimed, but must be entitled to their present possession.
Originally a prescriptive right could only be acquired by its enjoyment adversely during a period beyond the memory of man. The various statutes of repose with respect to lands, both in England and in this country, have been enacted chiefly for the purpose of regulating the period within which the prescriptive right must be exercised to allow the presumption of a grant, and they greatly abridge the period which formerly obtained within which a grant would be pre *273 sumed. The history of these statutes of repose and of limitation, and of their effect, is thus accurately and well stated by Mr. Justice Orton in Scheuber v. Held, 47 Wis. 340, 349, 2 N. W. 779, 780:
“First. Prescription at common law was strictly applicable only to incorporeal hereditaments, while, as to the land itself, the period of adverse possession and enjoyment was fixed by the statute of limitations. Second. The analogy between prescription and limitation was so dose and perfect that the period of prescription has now come to depend upon and follow that of limitation, very generally, in this country. Third. Prescription for the requisite period presupposed a deed having been given anterior to the time of prescription, and established a presumption of a grant as a presumptio juris et cte jure, while limitation raised no such presumption, but operated merely as an extinguishment of the remedy. The former conferred and established a right and title, while the latter only barred a recovery. This was the former distinction, but which has long since been lost by the decisions in this and other states; and now adverse enjoyment for the period of limitation extinguishes, not only the remedy but the title, of the former owner, in lands as well as hereditaments. It is said by Chief Justice Dixon in Knox v. Cleveland, 13 Wis. 246, ‘that the right or title of a party to property wlrch is adversely held and claimed by another is barred and cut off by his neglect to prosecute within the period prescribed by the statute of limitations, and that such neglect operated to divest and transfer it to the adverse claimant’; and the same principle is recognized in Sprecker v. Wakeley, 11 Wis. 432, Hill v. Kricke, Id. 442, Brown v. Parker, 28 Wis. 21, and in many other cases in this court. Fourth. The analogies between prescription and limitation, In this state, at least, not only establish the period of prescription, and cause them to operate alike in conferring title, but make them so near alike in qualities, principle, purpose, effect, and consequence, as to completely blend them together; and they are used interchangeably, as being substantially the same. In Smith v. Russ, 17 Wis. 227,—a case like the present, for flowing lands by means of a milldam,—what is pleaded in the answer as ‘prescription,’ as in this case, is called and treated as the ‘statute of limitations’ in the opinion; and in Haag v. Delorme, 30 Wis. 591,—a case of like flowage,—Mr. Justice Lyon says in his opinion: ‘The nature, qualities, and duration.of the user and enjoyment of an easement which will constitute a valid right thereto by prescription are precisely the same as are required by the statute of limitations to enable the occupant of lands to defeat the title of the true owner;’ and then holds that ‘the occupancy of the lands for such purpose must be continued, uninterrupted, and adverse for .the length of time prescribed by the statute.’ This clearly implies that the statute of limitations applicable to real actions affecting the title of the lands is equally applicable to an action like the present, and the language of the statute itself may well bear such an interpretation. The former statute in these respects is the same in the revision; and section 4206 provides that ‘civil actions can only be commenced within the periods prescribed in this chapter,’ clearly implying and comprehending all civil actions, including this action as well. Section 4208 provides that ‘no defense or counterclaim founded upon the title to real property or to rents and services out of the same, shall be effectual,’ etc. ‘Ileal property’ is defined by the statute ‘to include lands, tenements and hereditaments, and all rights thereto and interests therein.’ This language is certainly broad enough to include the rights and interests in lands involved in this action, and, as we have seen, tlrs court, in Haag v. Delorme, supra, and in other cases, has given such a construction to it.”
The court further observed:
“We conclude, then, that under the effect of said section 26, c. 138, Rev. St. 1858, the adverse possession and user of the lands in question, by means of the milldam, for more than twenty years, would be protected both by the statute of limitation and by prescription, and confer a title to the lands for such use upon the defendants, as against the state and other parties; and, if such *274 period had expired before the amendment of 1877, such right and title had become vested in the defendants.”
See, also, Sabine v. Johnson, 35 Wis. 185, and Murray v. Scribner, 70 Wis. 228, 233, 35 N. W. 311.
We quote thus at length from the opinion of Mr. Justice Orton because in the consideration of the question presented we must look to the decisions of the supreme court of the state whose law we are considering, and must conform our judgment to the construction of the statutes held by that court, and because we think the case of Scheuber v. Held declares that the construction of the statute contended for by counsel cannot be sustained. The easement to flow the lands of another is not hostile to every other title, in the sense in which counsel would construe the language of the statute. The claim of such an easement recognizes the title in fee in another. It does not seek to divest the title of the owner of the land. It merely imposes a burden upon the land,—the right to flow the land acquired by exercise of the right during the period prescribed by the statute. It is, however, adverse to the owner of the fee, with respect to the claim asserted. It was ruled in Knox v. Cleveland, referred to in Mr. Justice Orton’s opinion, that the right and title to property held adversely and claimed by another are barred and cut off by failure to prosecute within the prescribed period, and that such neglect operates to divest and transfer the title to the adverse claim. This language was strictly accurate as applied to the case then in hand; but in Scheuber v. Held the court was careful to limit.the effect of that language in respect to easements acquired by adverse possession, and to say that such adverse user would confer a title to the lands for such use, thus clearly restricting the title acquired by adverse possession and use to the defined claim of title under which such use was asserted. It is true that in Scheuber v. Held the claim was not founded upon possession under a written instrument, but was rested upon 20 years’ adverse user merely. It is, however, to be observed that whether the possession asserted be that of 10 years under, or of 20 years not under, a written instrument, in either case the entry and the possession must be under claim of title exclusive of any other right. . If, therefore, the contention of counsel be correct, neither of these statutes would apply to the case of a claim for an easement. They were, however, as we know historically, enacted in regulation of prescriptive rights, and in modification of the common law. The construction claimed would declare erroneous the decision of the supreme court of the state in the cases referred to; for, if the prescriptive right cannot be acquired under the one, it cannot be acquired under the other, of the statutes of repose, since both require an entry and possession under the claim of title exclusive of any other right. Neither can we perceive any just reason, if, as has been held by the supreme court of the state, a prescriptive right may be acquired under section 4213, why it may not be acquired as well under section 4211. Both statutes are in regulation of the same subject-matter. Both require an entry under claim of title exclusive of any other right. The distinction is that the one contemplates an entry and possession under a written in *275 strument purporting to be a conveyance of the right claimed, and the other an entry and possession not under any written instrument. We see no escape from the conclusion, as a logical consequence of the principle asserted in Scheuber v. Held, that an easement may be acquired against the owner of the fee by adverse possession for the period prescribed, whether under or without a written instrument, and that the title acquired by such adverse user is not the title in fee, but the title and the right to the use claimed.
The principle asserted finds support in other states. Thus, in Van Derzee v. Van Derzee, 30 Barb. 331, 337 (affirmed upon other ground in 36 N. Y. 231), a portion of the property had been held, possessed, and claimed for a long period as under a lease in fee. The court observed:
“It has been held adversely to the landlord,—that is, the interest of the tenant or lessee in fee, as sneh, has been so claimed and held,—and that makes as perfect a title by adverse possession as if the Van Derzees had claimed the whole title and the entire interest. It has been held as a lease or rent farm, and from the moment that the lease was made, or rent paid and received, the title of the tenant to the farm, as tenant, to the extent of the qualified ownership resulting from the relation of landlord and tenant, was as perfect and as adverse to the landlord’s title or claim to the tenant’s interest as is the title of the grantee in a deed perfect against, and hostile to, the title of the grantor, from the moment the deed is executed.”
In Wilklow v. Lane, 37 Barb. 244, decided by Justices Gould, Hogeboom, and Peckham (the latter now of the supreme court of the United States), there was a paper writing, called a “lease,” granting the privilege of turning a stream of water from its course, and using the same, executed long after the lessor had conveyed all his interest in the land, and which was absolutely void as against the grantee .of the lands and those claiming under him. It was held that he who undertook to grant this right, by making the instrument, asserted a right to the thing granted, which assertion or claim passed by the instrument, and, being accompanied by actual enjoyment, was as effectual as an adverse claim as though it embraced the entire estate in the land. The court observes :
“This, so far as the lease is concerned, is not a claim of the entire title. Tt contemplates and acknowledges the legal title in another, but, to the extent of the rights under the lease, is as essentially a hostile claim, and as perfect an answer to the right to present possession, which is the foundation of an action of e.iectment, as if the claim had been co-extensive with the entire title. To constitute an adverse possession, there need not necessarily be an exclusive claim to the entire title, nor one which necessarily excludes the idea of title in another person, although it must be accompanied in this ease by a notorious disclaimer of the plaintiff’s title to so much as is embraced in the plaintiff’s-claim!”
Judge Elliott, in Ms recent valuable treatise on Railroads, asserting the right of acquisition of a right of way by adverse possession, observes:
“We suppose that, when the possession consists in the use of-the land as a right of way, an easement and not the fee will be acquired.” 2 Elliott, R. R. §§ 401, 402.
See, also, generally, Railway Co. v. Loring, 2 U. S. App. 310, 2 C. C. A. 546, and 51 Fed. 932; Quindaro v. Squier, 4 U. S. App. 569, 2 C. C. A. 142, and 51 Fed. 152; Blair v. Railroad Co., 24 Fed. *276 539; Hargis v. Railroad Co., 100 Mo. 210, 223, 13 S. W. 680; Moore v. City of Waco, 85 Tex. 206, 211, 20 S. W. 61; Sherlock v. Railway Co., 115 Ind. 22,17 N. E. 171; Liddon v. Hodnett, 22 Fla. 442.
We are not referred to any decision of the supreme court of the state of Wisconsin which, in our judgment, militates against the position taken or against the principles announced in Scheuber v. Held. In Pinkum v. City of Eau Claire, 81 Wis. 301, 51 IN'. W. 550, the owners in fee of certain lands executed to the city a perpetual lease, which should become void upon failure by the city to maintain and operate a raceway upon the westerly shores of the Chippewa river, and a public highway along and contiguous to the westerly shore of the canal; the grantors reserving the right to cut trees and timber, quarry stone, and dig earth, and remove the same from the premises described. A bill in equity was filed by the assignee of the lessors for breach of conditions, and for damage occasioned thereby, with the prayer for a mandatory injunction to compel the lessee to comply with the conditions and pay the damages, or, in the alternative, that the lease might be canceled. The case came before the court upon demurrer to the bill, one ground of demurrer being that the suit was not brought within the time limited by law. In other words, the city claimed that its possession under the lease, being for a period of more than 10 years before suit, was adverse, and vested in it title to the possession. The claim was remarkable, and was briefly disposed of upon the ground that the possession was only such as was necessary to the easement conferred by the lease, and could not, therefore, be adverse, or constitute a defense to a charge of violation by the city of its obligations under the instrument by which it obtained and held possession. In City of Racine v. Crotsenberg, 61 Wis. 481, 21 N. W. 520, it was held that a city cannot maintain ejectment to recover possession of a public alley or street, and that, because its interest therein is a mere easement, it was not entitled to the possession of the premises, within the meaning of the statute respecting actions of ejectment. The court observed that ejectment lies only to recover things corporeal which may be the subjects of seisin, entry, and possession, and that there can be no seisin of an incorporeal hereditament, and it cannot be the subject of entry and possession. It “lyeth in grant and Dot in livery.” It is an interesting question whether the easement which a municipal corporation acquires in the modern street ought ever to have been classed in the category of incorporeal hereditaments. They are rights issuing out of a thing corporate (whether real or personal), or surrounding or annexed to or exercisable with the same, while a corporeal hereditament includes that which is of a substantial, tangible nature. 1 Washb. Real Prop. (5th Ed.) p. 36. A right in a highway was originally classed, and rightly so, with incorporeal hereditaments, because there .was granted a mere right of passing over, and it came about that the streets of a city have been placed in the same category; but the rights which a municipal corporation has in the streets óf a city are very different from the rights of the public in a highway of'the country. The easement is not confined to a mere passing over. . The street may be graded and improved, the grade may be rais *277 ed or lowered, the earth excavated. It may be tunneled, and water mains, gas mains, sewers, and telegraph and telephone wires laid therein, and cars propelled by steam, electrical, cable, or horse power may be authorized to be operated in such tunnel, as likewise upon the surface of the road (except, possibly, as to cars operated by steam power); and so, also, great steel structures spanning the roadway of the street may be authorized to be constructed for the operation of an elevated railway. In fact, there is at this day, as declared in Barney v. Keokuk, 94 U. S. 324, no substantial difference between streets in which the legal title is in private individuals and those in which it is in the public, as to the rights of the public therein. Notwithstanding, the public right in a street still seems to be classed as an incorporeal hereditament, although it possesses many if not all of the substantial qualities of a corporeal hereditament. The evolution of the law does net, in this instance, seem to have kept pace with the evolution of society. The classification is, however, purely technical, not affecting substantial right; for while ejectment may not be maintained to recover possession of an easement, because of the highly technical ground stated, it is still true that the law will protect possession under an easement in an equitable proceeding. Indeed, there would seem to be little question at this day that a railway company, having the right to the exclusive possession of its right of way, which is an easement, may maintain ejectment to protect the right. We need not further consider the opinion in City of Racine v. Crotsenberg; for, conceding its correctness, it by no means leads to the conclusion that a prescriptive right may not be obtained by adverse possession under the statutes of Wisconsin. If the title acquired be not such as will support an action of ejectment, possession for the prescribed period under claim of right creates a title and a right to the claim asserted, which is effectual as a defense against one seeking possession.
The questions discussed have by no means been free from difficulty» We are, however, constrained, after careful investigation, and consideration, to the conclusions stated.' It is proper to add that the-court below, in „ its charge upon the question of 20 years’ adverse-possession, seemed to entertain no doubt that such adverse possession, would come within the protection of the statute, although the claim under which entry was made and possession held was not hostile-to the title in fee. For the reasons stated,' we are of opinion that the instruction asked and refused should have been given, and that the charge to the jury, in the particulars referred to, was erroneous., We do not deem it requisite at this time to consider the other obr jections raised at the trial. The judgment will be reversed, andi the cause remanded, with directions to grant a new trial.