TREAT and another, Appellants, vs. HILES, Respondent.
TREAT and another, Respondents, vs. HILES, Appellant.

*November 12 — December 3, 1889.*

*(1, 2) Appealable orders.   (3) New trial as to part of issues.*

1. An order denying a motion for judgment on a verdict is not appealable.

2. A party cannot appeal from that part of an order made on his own motion granting relief asked by him, although his request for relief was in the alternative.

3. In an action for breach of a contract, where the special verdict fails to establish the existence of the contract as a binding obligation upon the defendant, a new trial granted on the plaintiff's motion should not be limited to the question of damages.   [Whether in an action at law the court may grant a new trial of a part only of the issues, not determined.]

APPEALS from the Circuit Court for *Milwaukee* County. The case comes to this court on three appeals —; two taken by the defendant and one by the plaintiffs — from

orders made therein. The jury returned a special verdict consisting of answers to fifty-three questions submitted to them. The defendant moved for judgment thereon, and appeals from an order denying his motion.

The plaintiffs moved to strike out several of the findings as unsupported by proof, and to insert others in their places which, it is alleged, are proved by the uncontradicted testimony, and for judgment upon the corrected verdict. They also asked in their motion that if such relief should be denied, and not otherwise, a new trial of the question of damages only should be granted, and the corrected verdict confirmed in all other respects. The court granted the motion in so far as it asked for a correction of the findings, but refused to give the plaintiffs judgment on the corrected verdict. It also granted the alternative relief prayed, by granting a new trial, to be confined to the question of damages, and confirmed the corrected verdict except only as to damages. The order in that behalf bears date January 12, 1889. The defendant thereupon appealed from the whole of said order, and the plaintiffs appealed from that portion of it which awards a new trial on the question of damages.

This case was here before on appeal from an order sustaining a general demurrer to the complaint. Such order was reversed. 68 Wis. 344. It is erroneously stated in the commencement of the report of the case that the circuit court *overruled* the demurrer. A full statement of the allegations of the complaint will there be found.

The defendant has since answered, practically denying each of the material allegations of the complaint, and averring many facts in support of such denials.

The special verdict is very long, but it is thought best to insert it here entire as the readiest means of conveying a correct idea of the points to be considered on these appeals. The corrections made by the court will be noted in connec-

tion with the respective findings of the jury which were thus corrected. Such findings with the corrections are as follows:

"1. Did the plaintiffs in the fall of 1885 make known to the defendant, *Hiles*, the existence and location of a stone quarry then undeveloped, situated on the N. E. ¼ of section 18, town 8, North, of range 20, East, in the town of Menomonie, in the county of Waukesha, in this state? A. (By direction of the court.) They did.

"2. Did the defendant, *Hiles*, know of the location of such quarry before the same was made known to him by the plaintiffs? A. (By direction of the court.) No.

"3. Did the owners of said land then know how valuable the stone was that was situated upon said land? A. No.

"4. Did the defendant then, or at any subsequent time, agree to purchase said land and quarry and to take the title thereto in his own name, and to advance such moneys as might be required to pay for the same, not exceeding $12,000, and such moneys as might be thereafter required to open and develop the said quarry, and give the plaintiffs one half of the net profits of working the same, in return for the services of the plaintiffs in revealing to the defendant the existence and location of the quarry and in negotiating the purchase of the same, and bestowing their several services to the enterprise of working and developing the quarry? A. Yes.

"5. How long was such contract to continue? A. As long as both parties agree. (Corrected by court on motion of plaintiffs, by striking out the answer of the jury, and substituting therefor, 'as long as said quarry could be profitably worked.')

"6. Did the plaintiffs, or either of them, take any part in person or by their agents in negotiating for the purchase of the land and quarry in the name of the defendant? A. Yes.

" 7. Did Hiles subsequently accept a deed from the owners of said land, and pay $12,000 as the purchase price thereof?  A. (Answered by direction of the court.)  Yes.

" 8. Was such a purchase made in pursuance of the agreement between the plaintiffs and defendant as charged in the complaint?  A. Yes.

" 9. State whether after the land was conveyed in the fall of 1885, a foreman was employed and tools purchased to open a quarry?  A. Yes.

" 10. Did the plaintiffs assist in purchasing and paying for such tools?  A. Yes.

" 11. Did either of the plaintiffs go out to the quarry at or about the time the same was opened?  A. Yes.

" 12. If you answer the fourth interrogatory in the affirmative, did the defendant, after making said contract, refuse to carry the same into effect or to allow the plaintiffs to bestow their services and labor in opening and working the quarry or participating in the profits thereof?  A. Yes.

" 13. Did the plaintiffs signify to the defendant their willingness and desire to bestow such services to the working of the quarry and to join in the benefits thereof?  A. Yes.

" 14. Did they so signify such willingness to the defendant more than once, and if so how often?  A. Two times.

" 15. And did the defendant refuse to accept such services at the time the same were so offered?  A. Yes.

" 16. Did the defendant thereafter enter into the possession of the quarry to the exclusion of the plaintiffs?  A. Yes.

" 17. And did he thereafter continue in the possession and working of the same by himself and his agents and lessees, and if so how long thereafter did he continue in the possession?  A. (By direction of court.)  He sold an undivided one-half of the quarry December 16, 1885, and retained the other half, which has ever since been worked either by the defendant or by others working under some arrangement with him and paying him for the privilege.

"18. Is the stone quarry on said land of great value? A. It is valuable.

"19. Is the stone in said quarry of good size and quality? A. Yes.

"20. Could profit be derived from working the same if economically operated? A. Yes.

"21. How many cords of stone are there in the quarry in question? A. Cannot tell. (Corrected as aforesaid by striking out answer of jury and inserting ' between 150,000 and 1,000,000 cords.')

"22. How much is it worth per cord to quarry the stone and put it on the cars at the quarry? A. $1.75 on all stone on an average.

"23. How much will it cost per cord to ship said stone from said quarry to the city of Milwaukee? A. $4.20 per cord.

"24. How much will it cost per cord when shipped to Milwaukee to deliver it for building purposes within the city? A. $2.00 per cord.

"25. If you find the contract and breach as charged in the complaint, have the plaintiffs been damaged by reason of the defendant's refusing to carry into effect the contract securing them one half of the net profits of working said quarry? A. Yes.

"26. How much per cord would be the net profits of quarrying and marketing the several kinds of stone in said quarry? A. $4.00 on an average.

"27. At the time the defendant first notified the plaintiffs of his refusal to permit them to participate in the working of said quarry, did he then offer to sell to the plaintiffs one half or the whole of his interest in the land and quarry for what it cost him, and if so was such offer in writing? A. No, not in writing.

"28. Did the plaintiffs agree to purchase the same at that or any other price? A. No.

" 29. Did the plaintiffs or either of them, and if so which one, take any steps or do any acts towards making such purchase? A. *Hoyt*.

" 30. If either plaintiffs did such acts, state which one of the plaintiffs it was and what he did? A. *Hoyt* tried to raise money.

" 31. Did the plaintiffs, or either of them, agree with the defendant to surrender the cause of action set forth in the complaint in this suit by any act or acts which they or either of them did towards raising the money to purchase said quarry and land, or otherwise? A. (By direction of the court.) They did not, nor did either of them.

" 32. Did the plaintiff *Hoyt*, in the spring of 1886, purchase an interest in a stone quarry near the one in question, and continue in said quarry for about the period of six months? A. (By consent of counsel.) He did.

" 33. Did the plaintiffs, or either of them, notify the defendant that they could not make such purchase? A. Yes.

" 34. Did the plaintiffs, at the time the proposition of sale was made by the defendant, notify the defendant that they had no moneys with which to purchase the same? A. Yes.

" 35. Did the defendant, *Hiles*, ever pay any money to the plaintiffs in satisfaction of the claims set forth in the complaint? A. No.

" 36. Was not the $1,000 paid to each of the plaintiffs by the Hadfield Bros., paid exclusively for acquiring the interest which the plaintiffs owned in the M. M. F. & W. R'y Co., and services to be rendered in procuring local aid for said company? A. Yes.

" 37. Was not such payment upon the contract introduced in evidence between the plaintiffs and Ketchum of the one part and A. H. and G. A. Hadfield of the other part? A. Yes.

" 38. Was the defendant, *Hiles*, a party to that contract?

A. Yes. (Corrected as aforesaid by striking out answer and inserting 'No.')

"39. Did the defendant procure A. H. and G. A. Hadfield to purchase the interest of the plaintiffs in the railroad charter and pay them one thousand dollars each therefor in full satisfaction of any claim the plaintiffs or either of them had against the defendant in the purchasing and working of the quarry? A. (By direction of the court.) No.

"40. Could this stone quarry have been worked at a profit at the time it was purchased, without a railroad being built to it? A. No.

"41. Has this quarry been worked since its purchase? A. Yes.

"42. Has the quarry been worked since it was opened up at a profit? A. Yes.

"43. Could this quarry have been worked by the plaintiffs and defendant jointly at a profit? A. Yes.

"44. Is there an established market for stone in Milwaukee, sufficient to consume all the stone that might be quarried and brought to Milwaukee from this quarry, taking into consideration the other stone quarries in competition in the stone business? A. No.

"45. Is there any market in Milwaukee in which rubble stone can be sold and delivered at all times? A. No.

"46. Was the existence of this stone quarry a matter of notoriety? A. Yes.

"47. Do you find for the plaintiffs, and if you find for the plaintiffs at what sum do you assess their damages? A. $1,000. (Corrected as aforesaid by striking out such assessment of damages.)

"48. If you answer the question No. 4 'yes,' when and where was the agreement consummated? A. In the city of Milwaukee.

"49. If you answer the 4th question 'yes,' was not the agreement of the defendant to open and develop said quarry

and give the plaintiffs one half of the net profits of working the same, made conditional upon the defendant's investigating the quarry and seeing what there was in it? A. Yes.

"50. Did the defendant purchase said land at its fair value for farming purposes? A. Yes.

".51. If you answer question No. 9 'yes,' was the object of opening said quarry simply for the purpose of seeing what kind of stone there was in it, and to ascertain whether or not the working of said quarry could be profitably conducted by the parties to this action? A. Yes.

" 52. Could the defendant investigate the quarry and see what there was in it under the circumstances, so as to enable him to determine whether he would work the quarry in pursuance to the proposition of the plaintiffs, without first purchasing the farm upon which the quarry was situated? A. Yes.

" 53. Did the defendant refuse to work the quarry in pursuance to the proposition of the plaintiffs until after he had had the quarry opened up and investigated? A. Yes."

*N. S. Murphey*, attorney, and *S. U. Pinney* and *Charles W. Felker*, of counsel, for the plaintiffs, contended, *inter alia*, that a new trial may be granted in order to determine a particular point or correct a particular error, without opening the whole case. *Thwaites v. Sainsbury*, 7 Bing. 437; *Hutchinson v. Piper*, 4 Taunt. 555; *Cheyney's Case*, 10 Coke, ·118; *Burton v. Robinson*, 1 Keble, 882; *Queen v. Millis*, 10 Clark & F. 538; *O'Connell v. Queen*, 11 id. 365–388; *Stroud v. Stroud*, 7 Man. & G. 417; *Price v. Severn*, 7 Bing. 402; *Wood v. Gunston*, Style, 466; *Pleydell v. Dorchester*, 7 T. R. 529; *Bond v. Sparks*, 12 Mod. 275; *Price v. Harris*, 10 Bing. 331; *Green v. Elgie*, 5 Q. B. 107; *Cross Keys B. Co. v. Rawlings*, 3 Bing. N. C. 71; *Winn v. Columbian Ins. Co.* 12 Pick. 279; *Robbins v. Townsend*, 20 id. 345; *Sprague v. Bailey*, 19 id. 436; *Boyd v. Brown*, 17 id. 453; *Amherst Bank v. Root*,

Treat and another vs. Hiles.

2 Met. 522–542; *Seccomb v. Provincial Ins. Co.* 4 Allen, 152; *Kent v. Whitney*, 9 id. 62; *Johnson v. White*, 98 Mass. 330; *Toberts v. Rockbottom Co.* 7 Met. 46; *Macy v. De Wolf*, 3 Wood & M. 215; *Hariston v. Sale*, 6 Smedes & M. 634; *Roberts v. Heffner*, 19 Tex. 129; *Laney v. Bradford*, 4 Rich. 1; *U. S. v. Bird*, 2 Brev. 85; *Key v. Allen*, 3 Murph. 523; *Woodward v. Horst*, 10 Iowa, 120; *Dawson v. Wisner*, 11 id. 6–8; *Walker v. Blassingame*, 17 Ala. 810; *Edwards v. Lewis*, 18 Ala. 494; *Lisbon v. Lyman*, 49 N. H. 553, and cases cited; *Wood v. Wood*, 52 id. 429; *Janvrin v. Fogg*, 49 id. 340; *Finch v. Brown*, 13 Wend. 601; *Fitzhugh v. Wiman*, 9 N. Y. 565, 570.

Upon the verdict returned, and which is based upon uncontradicted evidence, the plaintiffs were entitled to judgment for the amount claimed in their amended complaint ($300,000) without any intervention of court or jury to further assess the damages. *Newton v. Allis*, 16 Wis. 197; *Krause v. Cutting*, 32 id. 687; *Eldred v. Oconto Co.* 33 id. 133; *Everit v. Walworth Co. Bank*, 13 id. 419; *Dengate v. Stirmell*, 72 id. 168; *Foster v. Jackson*, Hobart, 54; *Truebody v. Jacobson*, 2 Cal. 269; *Litchfield v. Londonderry*, 39 N. H. 247; *Wells v. Cox*, 1 Daly, 515; *Porter v. Rummery*, 10 Mass, 64. When the jury finds facts proved on which the amount of the judgment may be calculated, it is sufficient. *Secrest's Ex'rs v. Jones*, 30 Tex. 596; *Gibson v. Lewis*, 27 Mo. 532; *Skillen v. Jones*, 44 Ind. 136; *Berg v. C., M. & St. P. R. Co.* 50 Wis. 424–5; *Schweitzer v. Connor*, 57 id. 177; *Williams v. Porter*, 41 id. 422, 429; *McNarra v. C. & N. W. R. Co.* id. 69, 74; *Hutchinson v. C. & N. W. R. Co.* id. 541, 553; *Schultz v. C., M. & St. P. R. Co.* 48 id. 375, 379; *Fick v. Mulholland*, id. 413, 417; *Ward v. Busack*, 46 id. 407, 413; *Ault v. W. & W. Mfg. Co.* 54 id. 300; *Pool v. C., M. & St. P. R. Co.* 56 id. 227; *Gammon v. Abrams*, 53 id. 323, 326; *Weisel v. Spence*, 59 id. 301, 309; *Munkwitz v. Uhlig*, 64 id. 380, 387–9.

*John W. Cary*, attorney, and *C. W. Briggs*, of counsel, for the defendant, to the point that the court cannot order a new trial as to only a part of the issues, cited *Hodges v. Easton*, 106 U. S. 408; *Dahl v. M. C. R. Co.* 65 Wis. 371; *Annas v. M. & N. R. Co.* 67 id. 46.

LYON, J.   We have here three appeals from orders in the same action, none of which necessarily involve, to any considerable extent, the merits of the action.   They may all be disposed of by the application of approved rules of practice, without reference to the merits of the controversy between the parties.   They will be considered briefly in their order.

1. The defendant appeals from an order denying his motion for judgment in his favor on the special verdict returned by the jury.   This court has often held that an order for judgment is not appealable.   *Johannes v. Youngs*, 42 Wis. 401; *Joint School Dist. v. Kemen*, 68 Wis. 246; *Murray v. Scribner*, 70 Wis. 228, and cases there cited.   The reason of the rule is stated in *Murray v. Scribner* to be that, although such order may affect a substantial right, it does not determine the action or prevent a judgment from which an appeal may be taken.   See R. S. sec. 3069, subd. 1.   For the same reason the rule is applicable to an order denying a motion for judgment on a verdict.   Such an order does not prevent a judgment for the other party from which the moving party may appeal, or an order for a new trial from which he may also appeal.   Indeed, the result of a verdict necessarily is a judgment of some sort for one party or the other, or a new trial, and on an appeal by the aggrieved party, whether from the judgment or the order for a new trial, the court will determine whether such party is entitled to judgment on the verdict.

Neither does an order denying a motion for judgment on the verdict involve the merits of the action within the

meaning of subd. 4 of the above section. It is practically a ruling by the court on the trial with the same incidents which attach to a ruling sustaining a demurrer *ore tenus*, or admitting or rejecting testimony, and the like. Probably a bill of exceptions would be necessary to preserve the ruling denying the motion for judgment, notwithstanding the same was reduced to writing and filed in the case. See *Johannes v. Youngs*, 42 Wis. 401.

It must be held that the order denying the defendant's motion for judgment is not appealable, and hence the appeal therefrom must be dismissed.

2. The form of the plaintiffs' appeal is from that part of the order of January 12, 1889, which " awards and orders a re-assessment in this action of the plaintiffs' damages herein." This is precisely the relief the plaintiffs asked. Considering only the form of the order, the appeal cannot be sustained, for certainly the plaintiffs cannot attack by appeal an order made at their request. It is immaterial that such request was in the alternative. We are inclined to think, however, that the appeal should be construed to be from the portion of the order which denies the plaintiffs' motion for judgment. But for the reasons given above, such construction will not save the appeal. The plaintiffs' appeal must, therefore, be dismissed.

3. The defendant's appeal from the order of January 12, 1889, is well taken under subd. 3, sec. 3069, R. S., because it grants a new trial of an issue in the action. This appeal presents the question whether the new trial thus granted is properly restricted to the question of damages or should include all the issues.

The special findings may all be included under two general heads: (1) Those relating to the alleged contract to work the quarry jointly — the making thereof by the parties, its terms and conditions, the circumstances under which it was made, etc. (2) The damages accruing to the plaint-

iffs by reason of the breaches of such contract by the defendant, which include many specific findings of the elements of such damages and the circumstances affecting the amount thereof.

By fair implication, all the findings of the latter class, including the corrected answer to question 21, were set aside and nothing determined by any of them would be *res adjudicata* or have any effect in the re-assessment of the damages should the same be re-assessed under the order of January 12, 1889. The correction of the answer to question 21 is nothing more than a determination by the court that the undisputed testimony proves there were at least 150,000 cords of stone in the quarry. This means, of course, the quantity therein which would be marketable at a profit, to the exclusion of mere rubbish or unmarketable rubble stone. We do not think the undisputed testimony supports the finding, but whether it does or not is not very material to the determination of this appeal.

The circuit court was of the opinion that the damages assessed to the plaintiffs were, under the testimony and special findings, inadequate, and so set the assessment aside. If the question of damages was the only issue in the case we should say the court did not thereby exceed the limits of a sound legal discretion, and hence would not disturb the order in that behalf.

But there is another issue in the case of controlling importance. It is denied by the defendant that the parties ever entered into a contract for the joint working of the quarry, as claimed by plaintiffs, and there is much testimony in the record which tends to support such denial. Considering all of the findings on that issue, we are brought to the conclusion that there is an infirmity in the verdict which renders it an unsafe basis for a judgment affirming that such contract was made.

In their answers to questions 4, 9, 10, 49, and 51 the jury

find in substance and effect that the defendant entered into the contract with plaintiffs, as claimed by them, for the working of the quarry on joint account, and in part execution of such contract the parties employed a foreman and purchased and paid for tools to open the quarry; but that such contract was a conditional one — the condition being that before it should be binding upon the defendant he should investigate the quarry and ascertain its extent and value. And further that the object of opening the quarry (to which end the foreman was employed and tools purchased) was simply to ascertain whether or not it could be profitably worked.

While the contract remained conditional, probably it was competent for the defendant to terminate it without incurring liability to damages. It seems from the answer to the last question that he did so, for it is there found that before the quarry was opened and investigated he refused to work the same pursuant to the plaintiffs' proposition in that behalf thus conditionally accepted by him.

The circuit court did not disturb any of the above findings. By the order of January 12, 1889, it was adjudicated not only that they established the contract set out in question 4 and the answer thereto, but that the existence of such contract as an absolute, binding obligation upon the defendant, for the breach of which he is liable to respond in damages, had thereby become a verity in the case which could not thereafter·be controverted.

In view of the infirmity in the verdict above suggested, we must hold that such adjudication was erroneous. If a new trial shall be granted, the same should include all the issues. We think neither the original nor corrected verdict is a proper basis for judgment on either issue, and if either party desires a new trial of all the issues the same should be granted.

We have endeavored to say as little as possible in this

opinion on the merits of the controversy, lest we might inadvertently prejudice the case of one or the other of the parties if the cause shall be again tried. All questions of law arising upon the alleged contract, as well as the existence of such contract and the rule of damages, must be regarded as undetermined. Neither do we determine whether in an action at law the court may properly grant a new trial of a part only of the issues, leaving the verdict to stand as to other issues; or the cases in which that practice may be adopted, if there are such cases.

*By the Court.*— The appeal by defendant from the order denying his motion for judgment on the verdict is dismissed. The appeal by plaintiffs from a portion of the order of January 12, 1889, is also dismissed. On the defendant's appeal from the last mentioned order the order is reversed. The cause will be remanded for further proceedings according to law.